ISAAC FARRINGTON & another *vs.* DAVID M. HODGDON & others.

Suffolk. Nov. 10, 1875. — Jan. 11, 1876. ENDICOTT & LORD, JJ., absent.

An agreement of creditors "to accept seventy-five per cent. of the amount of indebtedness as set against our respective names; said seventy-five per cent. to be paid in two, four and six months, from December 15," the contract to take effect "provided all merchandise indebtedness accept the same settlement," is an agreement on the part of a creditor, who has sold the debtor merchandise, to compromise the whole claim set against his name, and rests upon sufficient consideration.

Creditors signed an agreement "to accept seventy-five per cent. of the amount of indebtedness as set against our respective names; said seventy-five per cent. to be paid in two, four and six months, from December 15," the contract to take effect "provided all merchandise indebtedness accept the same settlement." A., one of the creditors, held three notes of the debtor, two of which he had previously sold, taken back under false representations by the purchaser, and at the time he signed the above agreement was, with the knowledge of the debtor, endeavoring to force the purchaser to take the notes back, which was done before December 15. *Held,* in an action by A. upon the note not sold, that A. not being in possession or having control of the two notes sold, the debtor was not obliged as to them to tender the settlement notes. *Held,* also, as to the note in suit, that the debtor was not obliged to tender a settlement note of seventy-five per cent. on that note after the transfer of the other two notes, which the debtor had paid to the purchaser. *Held,* also, that evidence of conversations, tending to show the understanding of parties as to the notes sold, prior to the execution of the agreement, was not admissible to vary the written contract.

CONTRACT by Isaac Farrington and John G. White, doing business under the firm name of the Eagle Woollen Mills, upon a promissory note for $2236.82 dated November 7, 1872, and made by the defendants payable to their own order and indorsed by them. At the trial in the Superior Court, before *Pitman*, J., without a jury, the following facts appeared :

The plaintiffs sold the defendants merchandise, for which, on November 7, 1872, they received three notes, signed and indorsed by the defendants, each payable in six months from its date ; one

dated October 25, for $2236.82; one dated November 1, for $2236.84; and the third the note in suit. On Saturday, November 9, the plaintiff sold the first two of these notes to one Smith, a note broker, and received his check for their price. That night the great fire in Boston occurred. On Monday following this check was presented but was not paid; and one of the plaintiffs accordingly visited Smith, who informed him that he was unable to pay his check, but that he had heard Hodgdon say that morning that he should pay all his debts in full and not ask for any favors. The plaintiffs, believing this statement, were thereby induced to take the notes back and return Smith's check. The next day they learned from Hodgdon that this statement was not true; that the conversation never occurred; and that he should have to compromise with his creditors. They thereupon demanded of Smith that he should take the notes back; and, after several interviews, succeeded in forcing him to do so on December 6.

On November 18, the following agreement was drawn up for signature by the creditors of the defendants, and about a week thereafter was signed for the plaintiffs by White:

" Boston, November 18, 1872. We, the undersigned creditors of Messrs. D. M. Hodgdon & Co., agree to accept (75%) seventy-five per cent. of the amount of indebtedness as set against our respective names, said 75% to be paid in two, four & six months from December 15th, with interest at 7% per annum in notes of said D. M. Hodgdon & Co. The amount due in trust amounting to thirteen thousand dollars to be also extended with the merchandise indebtedness, and provided all merchandise indebtedness accept the same settlement. Eagle Woollen Mills by John G. White, Tr., $6710.48." The defendants learned that the two notes had been sold to Smith before the fire, and that the plaintiffs had been induced on Monday, by false representations, to take them back, within a day or two after the fire, and before the compromise paper was drawn up, and knew that the plaintiffs were making efforts to get Smith to take back the notes. Whether they knew that the plaintiffs expected to succeed was in dispute.

At the trial the plaintiffs offered the note in suit; the signature and indorsement were admitted; they proved that the defendants were partners, and rested. The defendants then offered

the agreement. The plaintiffs objected to the competency of the paper, but the judge overruled the objection and admitted it, to which the plaintiffs excepted. It was admitted that the notes, which, by the terms of the agreement the defendants were to give in settlement of their debts, were never given or tendered to the plaintiffs.

The judge found as facts that the figures set against the business name of the plaintiffs on the agreement were so placed by them to represent the aggregate indebtedness of the defendants on the three notes; that sometime before December 15, 1872, and after signing the agreement, the plaintiffs had parted with the ownership and possession of two of the notes, and so notified the defendants; that the holder of the notes insisted on payment in full, and that the defendants were compelled to pay the same at maturity to save suit, and their property from attachment; that they had notified the plaintiffs beforehand that they should be compelled so to do unless the plaintiffs protected them; that the defendants had always been ready to give the settlement notes provided for in the agreement, if the three notes were surrendered by the plaintiffs, but that they had always refused to give a settlement note for the one now in suit unless they were protected against the other two; that when the note in suit matured, one of the defendants called on the plaintiffs and offered to pay " the difference between the amount that had been paid by the defendants on the first two notes, and seventy-five per cent. of the whole indebtedness on the three notes," which was refused; and that, two days after, a formal legal tender was made of $559.20, as and for the balance due upon such an adjustment, which was also refused.

The judge found that this was not a correct legal computation upon the defendants' theory. But no question appeared to have arisen between the parties, except the principal one in the case. The judge also found that the agreement had been signed by most of the creditors before the plaintiffs signed; that it was executed by all the other creditors, and that, except as to the plaintiffs, all of its terms and provisions had been fully complied with by the parties thereto.

The plaintiffs offered evidence of conversations between them and their agent on the one part, and the defendants on the other,

tending to show the understanding of the parties as to the two notes aforesaid, and their oral agreements; but the judge excluded all such evidence of conversations prior to the execution of the agreement as inadmissible to vary a written contract. The defendants made an offer of judgment for $559.20.

The plaintiffs asked the judge to rule : " 1. That the agreement on which the defendants relied was not a release but simply a contract to extend the time for the payment of a part of the debts, and therefore was no defence to this action ; but if valid at all, was only valid as supporting an action for a breach of this contract.

" 2. That if it was an agreement to receive a part of the debts for the whole, it was without consideration and was void.

" 3. That at most it was a contract to release the defendants from their original debts upon their giving the plaintiffs certain notes specified in the agreement, and that, it being admitted that these notes were never given or tendered, the agreement was no defence.

" 4. That there was no evidence of a waiver of performance or tender by the plaintiffs.

" 5. That the three notes were three separate contracts, and that the defendants were bound to give or tender the notes called for by the agreement for seventy-five per cent. of each note, and that as this had not been done there was no defence to the note in suit."

The judge refused so to rule, and did rule : " That the contract was supported by a sufficient consideration ; that it was an agreement to release the defendants by the substitution of a new contract which the agreement specified ; that the obligation to give the notes therein specified was not severable ; that the defendants were not bound to give any new notes without the surrender of all the old ones ; and that, upon the facts found, the acts of the plaintiffs had rendered it unnecessary for the defendants to do anything further to entitle them to the benefit of said composition agreement."

The defendants made no question as to the right of the plaintiffs to recover in this form of action the balance of indebtedness, whether on notes or otherwise ; and the judge accordingly found for the plaintiffs in the sum of $717.63 only, and ordered judgment accordingly

To all these rulings and refusals to rule, the plaintiffs alleged exceptions.

*M. Storey,* for the plaintiffs.

*E. Avery & G. M. Hobbs,* for the defendants, were not called upon.

DEVENS, J. The plaintiffs contend that the agreement signed by them is to be construed as one to receive payment of a certain portion of their debts in a particular manner, while it did not affect the remaining portion thereof, and therefore that such portion was to be paid in the ordinary manner, and upon the terms on which the debts were originally contracted. It does not admit of this construction. The party signing agreed to "accept" seventy-five per cent. of the indebtedness to him which was to be paid in a manner specified, and this implied that the sum provided for was to be received instead of the full debt. The contract was also to take effect "provided all merchandise indebtedness accept the same settlement," and thus distinctly recognizes that the proposed transaction is a "settlement" of the plaintiffs' claims.

This agreement rested also upon sufficient consideration, if it was completed and became binding, by the fact that other creditors became parties thereto, because it became part of a composition by which the creditors stipulated mutually to release a part of their claims to their common debtor, and the rights and interests of all had become involved in the arrangement. *Perkins* v. *Lockwood,* 100 Mass. 249, and cases cited. If the defendants have since done all which by this agreement to release them from their original indebtedness, by the substitution of a new contract therein specified, they were bound to do, they are now entitled to avail themselves of it in defence to a suit brought upon one of the original notes.

It is argued that there was no tender of the notes proposed to be given in settlement, without which the transaction would be a mere executory agreement, and further, that there was no evidence upon which the court could properly find such a waiver of tender as would excuse this failure. It appears, however, that before December 15, at which date the interest upon the proposed new notes was to commence, the ownership and the possession of two of the three notes, which the plaintiff had assumed to settle,

had been transferred to Smith, and that Smith was then in a position to enforce payment of them in full, and subsequently did so ; and further, that the defendants have always been ready to give the settlement notes, if the three notes which constituted the claim of the plaintiffs were surrendered to them, or if they could be protected against the effect of this transfer to Smith. The law does not require idle and useless ceremonies. *Newcomb* v. *Brackett*, 16 Mass. 161. *Webster* v. *Coffin*, 14 Mass. 196. *Clark* v. *Moody*, 17 Mass. 145. *Buttrick* v. *Holden*, 8 Cush. 233. When, therefore, the plaintiffs had rendered it impossible on their own part to surrender the notes included in the claim they had agreed to release, it must be deemed that by so doing they waived the tender to them of the settlement notes. If one binds himself to do acts which he afterwards renders himself unable to perform, he thereby dispenses with the performance of conditions precedent to such acts. *Mayne's case*, 5 Rep. 20 *b.*

Nor were the defendants under any obligation to tender a settlement note of seventy-five per cent. on the note now in suit, after this transfer. To have compelled them to do this would have compelled them to pay much more than by their agreement they were bound to do. They were willing always to pay the difference between the amount that had been paid by the defendants on the first two notes, and seventy-five per cent. on the whole indebtedness, which was refused. The contract of the plaintiffs was an entire one ; they had treated their whole claim as but a single debt, although in fact it was made up of three notes ; and the court correctly ruled that the obligation to give the notes in settlement was not severable.

The evidence of conversations, tending to show the understanding of parties as to the Smith notes prior to the execution of the agreement, was rightly excluded as inadmissible to vary the written contract. Even if it was known to the defendants that the plaintiffs were endeavoring to induce Smith to take these notes under their alleged sale, it was competent for them by the written agreement to contract that the defendants should be released from them, on compliance with the terms therein prescribed.

As the defendants make no question as to the right of the plaintiffs to recover in this action the balance of the indebtedness,

after deducting from the seventy-five per cent. on the whole claim the balance due after payment of the Smith notes, no question as to the form of the action need be considered.

*Exceptions overruled.*