### WILLIAM W. LOWE *vs.* HENRY V. HARWOOD.

Suffolk. Jan. 20. — March 25, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

If B. agrees in writing to convey land to A. for other land and a sum of money, B.'s conveyance of the land to a third person, when A. is in no default, gives A. a right of action, although there has been no tender on his part; and it is no defence that A. has not shown that he was able to pay the money.

B. agreed in writing, on November 8, to exchange farms with A. On November 12, B. wrote to A. that his wife would not sign a deed, and he would have to give up the trade. After other correspondence, in answer to a notice from A. that he should hold B. to the agreement, B. wrote, on November 24, that the bargain depended on his wife's consent, and she refused, and that wound up the business. *Held,* that this amounted to a repudiation on B.'s part, which authorized A. to bring an action without making a tender. *Held, also,* that, no time of performance having been stated in the agreement, it was to be performed within a reasonable time; and that an action brought on December 12 was not prematurely brought.

CONTRACT for breach of an agreement to sell and exchange certain real and personal property. Writ dated December 12, 1883. Trial in the Superior Court, before *Rockwell,* J., who allowed a bill of exceptions, in substance as follows:

The plaintiff put in evidence an agreement, dated November 8, 1883, and signed by the parties, as follows: " This agreement certifies that W. W. Lowe agrees to sell to H. V. Harwood estate No. 159 Arlington Street, Chelsea, and $500 cash, subject

to $1200 mortgage, and take in payment therefor two farms in Middleborough of eleven and sixty-seven acres, with all the stock, crops, and tools, etc., as per list shown, except one Jersey cow and corn fodder, and said Harwood hereby agrees to exchange as aforesaid; said farms are subject to two mortgages of $250 and $500."

The plaintiff testified that, on November 7, he and the defendant together examined the Chelsea property, and, on November 8, the Middleborough farms; that, on signing the contract, he proposed to draw up a more formal one, and send copies to be signed by the defendant, which the plaintiff did on November 9, but received from the defendant a letter, dated November 12, containing the following: " What is more, my wife says she will not sign a deed, and says she will see it all sold at auction sooner.  You also do not state the rate of interest on mortgage. So taking it all around will have to give up the trade; " that the plaintiff replied, quoting a part of the agreement, and adding, " I expect to stand by that; " that when the contract was made the plaintiff owned said estate in Chelsea ; that there was no understanding that the contract should depend on the consent of the defendant's wife ; that, between November 8 and December 1, the defendant conveyed the Middleborough property to one Hawes ; and that on November 22, he wrote to the defendant as follows: " You will please take notice that I shall hold you to the agreement made with me on or about November 8, 1883, as to sale and exchange of real estate, &c., and I hereby offer to carry out my part of said agreement according to its true intent and meaning.  And I hereby offer to convey to you the real estate in Chelsea, named in said agreement, and I hereby offer and tender to you the ($500) five hundred dollars in cash, named in said agreement, and receive in payment a conveyance of the real and personal property named in said agreement, and to be transferred by you to me.  And you are also notified that I shall hold you responsible for all loss and damage which may be sustained by me by the non-performance of said agreement on your part.  Please inform me at once when and where you will meet me to carry out said agreement.  I am ready on my part, and will be ready at any time within ten days.  Neglect on your part to reply to this will be treated as a refusal to carry out

said agreement on your part." To this the defendant replied, on November 24, that he supposed his previous reply "wound up the business."

The plaintiff also introduced evidence tending to show damages from the alleged breach.

The defendant offered no evidence, but asked the judge to rule that the plaintiff had not made out a case. The judge ruled that the evidence did not show a sufficient tender of performance on the part of the plaintiff, and did not in law show a breach on the part of the defendant; and found for the defendant. The plaintiff alleged exceptions.

*C. G. Keyes,* for the plaintiff.

*T. Weston, Jr.,* for the defendant.

HOLMES, J. The defendant's conveyance of his land and chattels to a third person, when the plaintiff was in no default, was sufficient to constitute an actionable breach of contract, although the plaintiff had made no tender. *Newcomb* v. *Brackett,* 16 Mass. 161. *Buttrick* v. *Holden,* 8 Cush. 233. See also *Farrington* v. *Hodgdon,* 119 Mass. 453, 458. It is suggested that it does not appear that the plaintiff was able to pay the money which he was to pay. But he was personally bound for it, and the degree of his ability at any moment before he was called on to pay was no concern of the defendant's. The way for the defendant to test that was to tender performance on his side conditionally upon the plaintiff's performing his part of the agreement. See *Brown* v. *Davis,* 138 Mass. 458.

But apart from the conveyance, and it would seem before it was made, although the date is not fixed, the defendant broke the contract by repudiating it. The agreement was signed on November 8, 1883. The plaintiff at once and continuously tried to have it performed. But on November 12, the defendant wrote to the plaintiff that his wife would not sign a deed, and that " taking it all around will have to give up the trade." On November 24, after other correspondence, and in answer to a notice from the plaintiff that he should hold the defendant to the agreement, and calling on him to carry it out, the defendant wrote that the bargain was made dependent on his wife's consent. "She refused and I notified you, and that wound up the business as I understood it." Read in the light of what had

gone before, this was an absolute repudiation of the contract, which not only excused the plaintiff from making any tender and authorized him to rescind if he chose, (*Ballou* v. *Billings*, 136 Mass. 307, and *Gormley* v. *Kyle*, 137 Mass. 189,) but amounted to a breach of the contract. The contract was for immediate exchange, allowing a reasonable time for necessary preparations. In the absence of special circumstances, which do not appear, sufficient time had been allowed, even if any consideration of that sort could not be and was not waived by the defendant. The case is not affected by *Daniels* v. *Newton*, 114 Mass. 530, but falls within principles that have been often recognized. *Howland* v. *Leach*, 11 Pick. 151. *Tinney* v. *Ashley*, 15 Pick. 546, 552. *Hapgood* v. *Shaw*, 105 Mass. 276, 279. *Carpenter* v. *Holcomb*, 105 Mass. 280. *West* v. *Platt*, 127 Mass. 367, 370. *Laird* v. *Pim*, 7 M. & W. 474.                *Exceptions sustained.*