JACOB FOTERNICK & another *vs.* PAUL B. WATSON.

Suffolk.    March 17, 18, 1903. — October 19, 1903.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Contract*, Performance and breach, Construction.

In an action for the breach of an executory contract in writing in which no day of performance is named, the plaintiff, if he was not in default and was ready to perform, may recover without showing performance on his part, if he shows that the defendant left the Commonwealth in order to evade a tender of performance, or that the defendant wholly had repudiated the contract.

In an action for an alleged breach of an agreement in writing, it appeared, that the plaintiff, a builder, wishing to purchase a parcel of land on which was a mortgage for $10,800 and to build on it certain houses, applied to the defendant for a construction loan, that the defendant agreed to lend the plaintiff $36,000 on the houses to be erected, $20,000 when the houses, except the front walls, were built to the second floor, and the remaining $16,000 in instalments as the houses reached specified stages of completion, and the plaintiff agreed to build forthwith the houses on the land, and to give the defendant forthwith "a mortgage on said land which shall be a first mortgage when the first payment is called for", except that the defendant "may, if he desires, allow the present first mortgage of $10,800 with interest at four per cent per annum to remain on the land, provided he will assume same and pay interest thereon from date of first payment to us, which shall then be $9,200." The plaintiff purchased the land subject to the mortgage named, giving a second mortgage of $7,800 for the purchase money. He then gave to the defendant a mortgage for $36,000 on the property, and constructed the houses to the stage required for the first payment, when the alleged breach of the contract by the defendant occurred. *Held*, that the parties contemplated the payment of the pre-existing mortgages out of the first payment of $20,000 by the defendant, and that the plaintiff was entitled to look to that payment to make the mortgage for $36,000 a first mortgage.

CONTRACT for alleged breach of a contract in writing. Writ dated November 4, 1899.

In the Superior Court *Stevens*, J. made the ruling stated in the opinion. The jury returned a verdict for the defendant; and the plaintiffs alleged exceptions.

*A. Bon*, for the plaintiffs.

*R. Homans*, (*S. L. Whipple* with him,) for the defendant.

LORING, J.    In this case the jury were warranted in finding the following facts: The plaintiff Foternick is a builder by

trade. He wished to construct some houses on a parcel of land on which there was a mortgage for $10,800. Before buying the land or otherwise entering upon the undertaking he applied to the defendant for what is generally known as a construction loan, and on April 13, 1899, Foternick and the plaintiff Lavinsky, in whose name Foternick proposed to take title as a matter of convenience, entered into a written contract with the defendant, whereby the defendant agreed to lend the plaintiffs $36,000 "on first mortgage on five brick houses hereinafter described, to be erected" on the parcel of land in question, "as follows : $20,000 when cellars and brick walls, except front walls, are completed to level of second floor and second floor is on," and the remaining $16,000 in specified instalments as the houses reached specified stages of completion; and the plaintiffs agreed to build on said land forthwith five brick houses as there described, and also "to give said Watson forthwith a mortgage on said land which shall be a first mortgage when the first payment is called for, except that said Watson may, if he desires, allow the present first mortgage of ten thousand eight hundred dollars with interest at four per cent per annum to remain on the land, provided he will assume same and pay interest thereon from date of first payment to us, which shall then be nine thousand two hundred dollars; said mortgage to Watson shall precede all labor on the premises and all contracts for labor and material, of which fact we agree to give said Watson satisfactory evidence when the first payment is called for." The $36,000 was to be repaid in six months from April 13, with interest on the whole $36,000 at the rate of twelve per cent per annum from April 13. The defendant, who is a lawyer, was employed by the plaintiffs to examine the title. One half the lot was conveyed to the plaintiff Lavinsky on April 26, and the other half on June 7, both conveyances being subject to the mortgage for $10,800. The purchase money was $7,800, for which mortgages were given back, one on April 26 and the other on June 7, and what were then third mortgages conditioned for the payment of $36,000 were executed at the same time to the defendant, to wit, on April 26 and June 7. Although there were two mortgages conditioned to pay $7,800 and two mortgages for $36,000, there was but one sum of $7,800 and one sum of $36,000 to be paid.

The plaintiff Foternick began work immediately after June 7, when he first got title to the whole interest in the premises.

The jury would also have been warranted in finding that on Monday, August 7, or Tuesday, August 8, the construction of the five brick houses had so far progressed that the second floors were on, and the plaintiff Foternick went to the defendant's office and told him that he was ready or would be ready in a few days for the first payment, and asked the defendant to come out and inspect the buildings; and that the defendant promised to do so on the following Thursday or Friday at the latest. There was also evidence that the plaintiff Foternick waited at the buildings for the defendant on Thursday and on Friday until after the hour of the day had passed at which the defendant had been in the habit of visiting the buildings when he had been there before; and thereupon the plaintiff Foternick went to the defendant's office and was told that the defendant had gone on his vacation. The plaintiff Foternick then went to his own office and found the following letter from the defendant, dated August 10: " Dear Sir, — I have received notice from the Building Commissioner that complaint has been made by the Inspector against your buildings at the corner of Columbus Av. & Davenport St., on which I hold mortgage. I am not willing to make loans on buildings that are not satisfactory to the Inspector. As you may perhaps wish to place the loan with others who do not make this stipulation in their contracts, I have this day discharged my mortgages on the property." He also found a letter signed by the inspector of buildings notifying him " that a violation of Chapter 419 of the Acts of 1892 exists, to wit, Sect. 33 — Light hard brick used for outside work," and that he was required " to remove said violation at once." It appeared that the inspector assigned to the plaintiffs' buildings by the building commissioner was one Follansbee. The plaintiff Foternick called at the building department to see Follansbee on Friday, August 11, and on Monday, August 14, and on the second day found that Follansbee also had gone away on his vacation. He then was referred at the building department to a Captain Barry, who was a supervisor of construction to whom an appeal lay from Follansbee's decision. On Wednesday, August 16, Captain Barry inspected the buildings. Captain

Barry was called as a witness by the plaintiffs. He testified that on August 16 he found that there were in fact no light hard bricks in the houses and that there was no violation of the law ; and "closed" the complaint and indorsed a statement to that effect on the notice to the plaintiffs. He further testified that his decision was final unless an appeal was taken from it to the building commissioner, and in this case there was no appeal ; and that by the practice of the building department the notice of violation is sent out on the report of the inspector, by filling in a blank signed in advance by the building commissioner. It also appeared that Follansbee in the following May indorsed on his original report as to the violation "that the complaint has been removed. Cost $15." But there was no evidence that any of the brick which was in the buildings in August had ever been removed. There was evidence that what was meant by "Cost $15," was that the removing of the brick which he reported was a violation of the building act and substituting proper brick would have cost $15.

It also appeared that the mortgages for $36,000 were in fact discharged by the defendant by a release executed August 10, 1899, and put on record in the registry of deeds by the defendant on that day.

There was evidence that the plaintiff Foternick, on learning that the defendant had gone away, tried to get the money necessary to carry him through from other persons, and failing to do so lost all the money he had put into the undertaking, by a foreclosure of the mortgages for $7,800 on September 13. These mortgages became due on May 13. The defendant went away on his vacation August 11, and was away "about" a month.

After the plaintiffs had rested, and while the defendant was putting in his evidence and before he had rested, the defendant requested the presiding judge to rule that by the true construction of the clause of the contract requiring the mortgage for $36,000 to be a first mortgage "when the first payment is called for," the plaintiffs were not entitled to any part of the $36,000 in order to pay off the prior mortgages of $10,800 and $7,800, or either of them, but had to make the $36,000 mortgage a first mortgage when they called for the $36,000 and before the defendant was bound to pay over any part of the $36,000, and

as there was no evidence that the first mortgage for $10,800 and the second mortgage for $7,800, or either of them, had been discharged before this action was begun, the plaintiffs could not recover. The judge so ruled, and then directed the jury on all the evidence to return a verdict for the defendant, to which the plaintiffs excepted.

In ruling that the plaintiffs had not made out a case because the $7,800 mortgage had not been discharged before the date of the writ the presiding judge seems to have disposed of the case on the footing that the plaintiff Foternick had called for the $20,000 and not on the footing that he notified the defendant that he should call for it in a few days. The jury were warranted in finding the latter to be the fact. If they did so find, the plaintiffs would have made out their case without showing performance by them in making the mortgage for $36,000 a first mortgage, on showing that the conduct of the defendant had excused them from performing their part of the contract. In this view of the case the construction of the contract does not seem to be material.

We are of opinion that the plaintiffs had a right to go to the jury on the ground that the decision made by Follansbee, acting for the building commissioner, that there was a violation of St. 1892, c. 419, in using light hard brick, was reversed on appeal, and that the defendant had gone out of the Commonwealth to evade a tender under the contract and thereby the plaintiffs were excused from notifying the defendant of the fact that Follansbee's decision had been reversed, and from tendering performance.

We assume for the purposes of this discussion that the decision of the building department on the question of fact is final, although no reference has been made to any statute making it so.

There was evidence that the defect, if there was one, could be cured at an expense of $15, and the fact that the defendant saw Follansbee about the matter twice between Monday, August 7, and Friday, August 11, warranted the jury in finding that he knew the character of the defect. The fact that the defendant knew that the defect was one which, if it existed at all, could be cured at this trifling expense, taken in connection with the

defendant's own testimony that before many months had passed he suspected that there was fraud on the part of the plaintiffs and did not suppose that the building was ever to be completed or anything further to be done about it, and in connection with the other circumstances in evidence, warranted the jury in finding that the defendant left the Commonwealth to evade having a tender of performance made upon him. The case comes within *Gilmore* v. *Holt,* 4 Pick. 258, *Tasker* v. *Bartlett,* 5 Cush. 359, *Southworth* v. *Smith,* 7 Cush. 391.

It is not necessary to decide whether the action of the defendant was not such a total repudiation of the agreement even without a finding that he left the Commonwealth to evade a tender as to excuse further performance on the part of the plaintiffs. It is true, as argued by the defendant, that when one party to a contract relies on a repudiation as excusing him from making an offer to perform, the repudiation must be absolute. *Carpenter* v. *Holcomb,* 105 Mass. 280. *Wells* v. *Day,* 124 Mass. 38. *Galvin* v. *Collins,* 128 Mass. 525. *Lowe* v. *Harwood,* 139 Mass. 133. The case of *Pomroy* v. *Gold,* 2 Met. 500, is explained in *Carpenter* v. *Holcomb,* 105 Mass. 280, 284.

If the defendant in the case at bar had done no more than notify the plaintiff of the violation of the building laws, this would not have dispensed with the necessity of notifying him that the decision of Follansbee had been reversed by Barry on appeal, if the violation was ground for his refusing to go on. But the defendant did more than that. He discharged the mortgages to him conditioned for the payment of $36,000. We have assumed that the act of discharging the mortgages conditioned for the payment of the $36,000 was not decisive. We assume that a new mortgage could have been drawn and that no liens would have been good against the new mortgage which would not have been good against the mortgages which were discharged and under which no money had been advanced. The significance of the discharge of the mortgages lies in what that act would be fairly taken by the plaintiffs to mean. In determining that question the rule is that if the words used are doubtful they will be construed against the party using them in case the other party acted on them and was misled by them. *Barney* v. *Newcomb,* 9 Cush. 46. *Bascom* v. *Smith,* 164 Mass. 61. But

in addition to discharging the mortgages the defendant left the State, and apparently left word at his office that he had gone away, but no word as to where he had gone. The plaintiffs forbore to ask for the conversation which Foternick had with the person left in charge of the defendant's office on the defendant's objecting to its being put in evidence. What he was told when he called at the defendant's office at that time is material in this connection. Something further may appear when the case is tried again, and we express no final opinion on this matter.

The defendant has further contended that even if the plaintiffs were excused from performance the plaintiffs did not make out a case because they did not notify the defendant of the reversal of Follansbee's decision, and because they did not show that they were able to make the mortgage for $36,000 a first mortgage, and lastly because the time for performance had not come within *Daniels* v. *Newton*, 114 Mass. 530.

If the plaintiffs were excused from performance either because the defendant left to evade a tender or because his acts taken as a whole amounted to a total repudiation of his agreement, the plaintiffs were excused from giving that notice. What is said in *Scanlan* v. *Geddes*, 112 Mass. 15, 17, as to the necessity in such a case of a plaintiff making known to the defendant that he is ready and willing to go on, must be taken to have reference to the fact that in that case the plaintiff did make known to the defendant that he was ready to go on with the contract before the repudiation. If the plaintiff is not in default and the time for performance has not gone by, the plaintiff can maintain an action on the defendant's wholly repudiating the contract without giving notice after the repudiation takes place that he is ready to go on. See in this connection *Lowe* v. *Harwood*, 139 Mass. 133, 135.

No question was raised at the trial as to the plaintiffs' not having shown that they were able to make the mortgage for $36,000 a first mortgage and under the ruling which was made we do not think that it is open now. It is by no means clear that they had to show that fact in case they were excused from showing performance. It was held in *Lowe* v. *Harwood*, 139 Mass. 133, that a purchaser could maintain an action against a vendor of real estate on the vendor's repudiating his contract

without proving that he could have paid for the land, and this decision was put on the ground that "the degree of his ability [to pay for it] at any moment before he was called on to pay was no concern of the defendant's. The way for the defendant to test that was to tender performance on his side conditionally upon the plaintiff's performing his part of the agreement." Further facts in this connection may appear when the case is tried anew.

There is nothing in the suggestion of the defendant that this case comes within *Daniels* v. *Newton*, 114 Mass. 530. No day of the year was fixed for the payment of the $36,000 or any part of it. The time for the payment had come so far as the calendar goes. It only remained to show performance or an excuse from performance on the part of the plaintiffs to entitle them to maintain their action. In such a case the doctrine of *Daniels* v. *Newton* does not apply, as is recognized in that case. See *Daniels* v. *Newton*, 114 Mass. 530, 533. See also *Nason* v. *Holt*, 114 Mass. 541, 542. The case comes within *Parker* v. *Russell*, 133 Mass. 74; *Lowe* v. *Harwood*, 139 Mass. 133.

The construction of the contract adopted by the presiding judge is in our opinion wrong. As the question has been fully argued and may be material on the new trial, we will decide it now.

The presiding judge ruled that the plaintiffs were not entitled to the first payment of $20,000 to pay off the prior mortgages of $10,800 and $7,800.

The defendant contends that the case of *Gormley* v. *Kyle*, 137 Mass. 189, is decisive of the correctness of the ruling. But there is nothing in that case which affects the question. In *Gormley* v. *Kyle*, before there was any default on the part of the purchaser the vendor tendered a deed of land which was to be conveyed free from incumbrance without discharging an outstanding incumbrance. It was held that it was no answer to say that the defendant could have retained enough of the purchase money to pay off that incumbrance. There is nothing in that case which holds that if the plaintiff had told the defendant that when it came to passing the papers he should have a release of the outstanding incumbrance duly executed, ready to be delivered on payment of the amount due thereon,

which was less than the purchase money, the offer would not have been a good offer of a readiness to perform, or that a tender of a deed coupled with such a release would not have been a good tender.

It is true, however, that taken literally the words used require the construction contended for by the defendant. But it is stipulated in the contract that if the defendant elects to assume the first mortgage for $10,800, the amount of the first payment was to be $9,200 in place of $20,000. That shows that it was understood that $10,800 of the $20,000 was to be used in paying off the original first mortgage and was not to be used for anything else, and if not so used was not to be advanced. There is nothing to show that there was to be such a difference between the mortgage for $10,800, which was the only incumbrance on the property when the contract was made on April 13, and any other incumbrance that might be on the property when the time for the first payment came as to preclude the remaining $9,200 being used to pay off the other incumbrances. The very object of the agreement leads to the same construction, namely, to provide the money necessary to carry the plaintiffs through until the buildings were completed.

For these reasons we are of opinion that the ruling was wrong, and that the plaintiffs had the right to look to the $20,000 to make the mortgage for $36,000 a first mortgage.

*Exceptions sustained.*