DIEBOLD SAFE AND LOCK COMPANY *vs.* ROBERT M. MORSE.

Suffolk.     June 23, 1919. — October 14, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Res Judicata. Contract,* To make a lease, Performance and breach. *Frauds, Statute of.*

The decision in *Diebold Safe & Lock Co.* v. *Morse,* 226 Mass. 342, was to the effect that the plaintiff could not maintain a suit in equity for the specific performance of the provisions of a lease in writing which it was the intention of the parties should be executed in duplicate and mutually exchanged and delivered, where it appeared that the lease had been executed and delivered by the defendant only and that, before delivery by the plaintiff, the defendant had refused to proceed further and had terminated negotiations; and was not a decision that an action at law would not lie to recover damages for a breach by the defendant of an oral agreement to make the lease in question; and therefore the final decree in the suit in equity is not a bar to such an action at law.

Where, after negotiations between the owner of certain real estate and a prospective tenant, the parties agreed orally upon the terms and conditions for a lease, which was to be executed in duplicate and the duplicates to be mutually exchanged and delivered, and the owner sent by mail to the prospective tenant a letter stating in substance that he enclosed two leases for execution and the return of one to him, the term provided in the lease beginning nearly a month after the letter was mailed and the letter not stating any time for the return of the copy of the lease duly executed by the prospective tenant, the owner cannot avoid performance of his contract to make the lease by notifying the prospective tenant three days after the leases were mailed to him that he must return the lease duly executed three days later and that, otherwise, negotiations would be considered cancelled.

If the owner of the real estate, under the circumstances above described, upon the lapse of the time during which he so demanded that the lease, duly executed, must be returned to him, notified the prospective tenant that negotiations were cancelled, he thereby repudiated the contract and the prospective tenant at

once had a right to bring an action at law for the breach of the contract to make a lease without first tendering to the owner the lease duly executed by him.

Where the owner of real estate and a prospective tenant orally agree upon the terms and conditions of a lease of the real estate, to be executed in duplicate and the duplicates to be mutually exchanged and delivered, and the owner then writes a letter to the prospective tenant enclosing two leases, executed by him and containing the terms and conditions agreed upon, and requesting the prospective tenant to execute them and return one to him, such letter with the enclosures constitutes a sufficient memorandum in writing to satisfy the statute of frauds, R. L. c. 74, § 1, cl. 4.

CONTRACT, with a declaration as amended in two counts, the first count being upon a breach by the defendant of an agreement in writing to lease to the plaintiff the premises numbered 55 Sudbury Street in Boston, and the second count being based upon allegations that "in consideration of the plaintiff's agreement to accept a lease of said premises and other valuable considerations, the defendant agreed and promised to give to the plaintiff a lease of the said premises; that a memorandum or note of such contract is in writing and signed by the defendant or by his agent thereunto by him lawfully authorized," and that the defendant refused to perform his contract. Writ dated November 3, 1917.

The answer, besides a general denial, alleged in substance that the subject matter of this action was rendered *res judicata* by the decision in the bill in equity between the same parties reported in 226 Mass. 342, and also set up the statute of frauds.

The case was tried before *Hall*, J. The plaintiff's counsel, in his opening statement to the jury, stated among other things in substance that on about August 1, 1915, "there was an absolute agreement" between the plaintiff and the defendant that the premises numbered 55 Sudbury Street in Boston should be leased to the plaintiff by the defendant upon certain terms and conditions; that on August 3 the agent of the defendant wrote a letter which stated that he enclosed "herewith two leases" of the premises in question, and adding, "Will you kindly have these executed and return one copy to me?"; that leases, containing the terms and conditions agreed upon and duly executed by the defendant, were enclosed in that letter; that afterwards the defendant's agent was told by the defendant that when he had leased adjoining premises to another person in the same kind of business he had promised that he would not lease any more of

his property to a person in that line of business; that then the defendant "wanted to get out" of the lease to the plaintiff; that the defendant's agent then knew that, if the leases were sent to New York, they would have to be sent on to Canton, Ohio, for execution; that the letter sent to the plaintiff on August 3 was sent to New York; that on August 6, a Friday, the defendant's agent wrote again to the plaintiff in New York, stating that the defendant had sent to the plaintiff on "last Tuesday, the twenty-seventh of July," the leases in question, and that, unless they were returned by Monday morning, August 9, by the first mail, negotiations would be considered by the defendant cancelled; that Saturday was a half holiday in New York, and that the leases had to go to Canton, Ohio, for execution by the plaintiff; that on August 7, before receiving the defendant's letter of August 6, the plaintiff had acknowledged receipt of the leases and had stated that they had been sent to Canton, Ohio, for execution; that on Monday, August 9, the defendant's agent wrote to the plaintiff, stating that, the lease not then having been received, all negotiations were terminated.

At the close of the opening statement by the plaintiff's counsel, the defendant moved that a verdict be ordered for him on the opening statement, the pleadings, and the report of the judge of the Superior Court in the suit between the same parties, decision in which was reported in 226 Mass. 342. Material facts contained in that report are described in the opinion, *infra.* The motion was granted, and, at the request of both parties, the case was reported to this court for determination, it being agreed that, if the verdict for the defendant was ordered rightly, judgment should be entered upon such verdict, and if such verdict should not have been ordered, "verdict to be for the plaintiff and the case remanded to the Superior Court for hearing upon the question of damages only."

The case was submitted on briefs.

*J. E. Crowley,* for the plaintiff.

*W. M. Richardson,* for the defendant.

PIERCE, J. The direction of a verdict for the defendant upon the opening, upon the pleadings and upon the report of the Superior Court judge in the action of the *Diebold Safe & Lock Co.* v. *Morse,* which was reported in 226 Mass. 342, was error. In his opening

to the jury counsel for the plaintiff made a declaration of the facts which he expected to prove by testimony, which are the facts, in substance, reported in the suit in equity. In addition thereto he stated, "There was some other correspondence that will come in the evidence, I will not take the time in the opening." The record does not disclose any inquiry by the presiding judge or by the counsel for the defendant concerning the probative value of the additional letters to be offered in testimony, and it was evidently assumed that such letters were those printed in the report other than such as were read in the opening. We consider the reference to the unread letters on this footing. The copy of the report which was offered by the defendant was admitted to be the report of the Superior Court judge in the suit in equity.

This is an action of contract to recover damages for the breach of an oral agreement by the defendant to lease and demise certain premises to the plaintiff. The defendant contends that the decree of this court in *Diebold Safe & Lock Co.* v. *Morse, supra,* is an adjudication of all rights of the plaintiff and is a bar to the present action. The defendant also, in addition to a general denial sets up in defence the statute of frauds.

The opinion in *Diebold Safe & Lock Co.* v. *Morse, supra,* on the reported facts dealt with the prayers of the plaintiff, first, "that the defendant may be decreed specifically to carry out the terms of said lease, and to forthwith deliver up to the plaintiff said premises free from all tenants;" second, "that there may be an assessment of the damages sustained by the plaintiff by reason of the defendant's refusal to abide by the terms of said lease;" third, "that the plaintiff may have such other and further relief as the nature of the case requires;" and limited the decision by the statement that "the plaintiff is not asking for specific performance of an oral agreement to give a lease, but for the specific performance of the executed lease. Its contention is that when the defendant signed the indentures and delivered them and the plaintiff accepted them, the rights of both parties became fixed and the defendant is bound by all the terms and conditions of the instrument."

The report in the former case contained the finding of fact: "It was the intention of the parties that the lease was to be executed in duplicate, that the due execution of the lease on the part

of the plaintiff as well as on the part of the defendant was to be a condition precedent to the creation of the leasehold; and the duplicates thus duly executed were to be mutually exchanged and delivered." With such a finding of fact it is plain neither the plaintiff nor the defendant had any enforceable rights against the other arising out of any express or implied covenant in the instrument,—incomplete because executed by the defendant alone. The decision goes no further and does not decide that specific performance will not lie to enforce an oral agreement to execute and deliver an indenture of lease, or that an action at law will not lie to recover damages for the breach of such an oral agreement. Without an amendment of the bill it is plain there could not have been a decision in the suit in equity on the merits of the issue presented in the action at law, and it is manifest the same evidence would not sustain both actions. It follows that the decision in *Diebold Safe & Lock Co.* v. *Morse, supra,* is not a bar to the maintenance of the action at law. *Burlen* v. *Shannon,* 99 Mass. 200. *Ballou* v. *Billings,* 136 Mass. 307. *Sly* v. *Hunt,* 159 Mass. 151. *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad,* 164 Mass. 222. *The Haytian Republic,* 154 U. S. 118. *Bell* v. *Merrifield,* 109 N. Y. 202.

The undisputed facts found by the presiding judge, and reported in the suit in equity, prove that "the parties came to terms, and duplicate indentures of lease were prepared in the defendant's office for their signatures;" that the lease was to run for a term of three years from September 1, 1915; that August 3, 1915, the defendant through his duly authorized agent executed the indentures in duplicate, mailed them to the plaintiff at New York with an enclosed signed letter, which read: "I enclose herewith two leases for the first floor on No. 55 Sudbury Street. Will you kindly have these executed and return one copy to me? . . ." Other than the implied condition that indentures of lease in the form agreed upon and "prepared in the defendant's office" should be executed by the parties thereto within a reasonable time after the drafting, August 1 or 2, 1915, and before September 1, 1915, the day when the lease was to become operative, the contract of the parties contained no limitation of time for the execution and mutual exchange and delivery of the duplicate leases. See *Atwood* v. *Cobb,* 16 Pick. 227; *Lowe* v. *Harwood,* 139 Mass. 133.

On August 6, the defendant's agent wrote the plaintiff at New York saying that a lease had been sent for its signature, that no reply had been received, and that "unless the lease is returned to this office by Monday morning, August 9th, by the first mail, we shall consider that all negotiations are cancelled and shall be free to lease the property elsewhere." On receipt of the lease executed by the defendant, the plaintiff's secretary stamped on each instrument the words "Diebold Safe & Lock Co. . . . Secretary." He affixed his signature to one, which he retained, and through accident or mistake failed to affix his signature or that of any other official of the plaintiff's company to the other, which he forwarded to the defendant on August 10. The instrument was received by the defendant and his agent wrote the plaintiff: "Your letter of August 10th enclosing a lease to the property at 55 Sudbury Street has been received. On August 6, I wrote you that unless the lease was returned to us by Monday morning, August 9, we should consider all negotiations cancelled. As the lease was not returned we have acted on that assumption. I wrote you also on August 9 notifying you that negotiations were terminated. The lease which you return to us is not executed by your company. We regret very much that we have been unable to come to satisfactory arrangements."

Upon disputed testimony it could have been found: "In the middle of August" the plaintiff tendered the defendant a duplicate lease, properly signed. Upon this subject, the presiding judge reported: "I am satisfied that they [the plaintiffs] then manifested their readiness and willingness to do everything which it was essential for them to do to acquire the leasehold, including the proper signing and delivery of the duplicate, but were given by Mr. Lazenby [the defendant's agent] clearly to understand that the duplicate lease not having been delivered on August 9th, the transaction was at an end. I further find that whether the plaintiff did or did not actually tender the duplicate duly signed and executed, its agents were also given to understand at this interview that such an offer would be nugatory, and I find that in fact it would have been nugatory. The defendant adhered to this position, and in the light of the correspondence which preceded the arrival of the lease enclosed in plaintiff's letter of August 10, 1915, and of the subsequent conversations between the parties,

I have no reason to suppose that after August 9th his position would have been different if the lease had borne the written signature of the secretary or any other officer of the company."

The defendant's letter of August 9, wherein he wrote: "Not having received the lease to the store on Sudbury Street by this morning, I wish to state that all negotiations are terminated and that we shall proceed at once to take steps to let the property. Kindly return both copies of the lease which were sent to you;" and the adherence of the defendant to his position therein taken, were an absolute repudiation of the contract, which excused the plaintiff from thereafter making any tender of the duplicate executed lease. *Lowe* v. *Harwood, supra. Foternick* v. *Watson,* 184 Mass. 187, 193.

The letter of the defendant and the included indentures of lease therein referred to, expressed every element of the contract to satisfy the statute of frauds. R. L. c. 74, § 1, cl. 4. *Freeland* v. *Ritz,* 154 Mass. 257. *Hibbard* v. *Hatch Storage Battery Co.* 174 Mass. 296. There is nothing here in conflict with the decision in *Mentzer* v. *Hudson Savings Bank,* 197 Mass. 325. *Leatherbee* v. *Bernier,* 182 Mass. 507. *Bogigian* v. *Booklovers Library,* 193 Mass. 444. *Hazard* v. *Day,* 14 Allen, 487.

It follows, in accordance with the terms of the report, that a verdict is to be for the plaintiff and the case remanded to the Superior Court for hearing upon the question of damages only.

*So ordered.*