## HOME DEVELOPMENT COMPANY v. ARTHUR JORDAN LAND CO.

[No. 14,885. Filed June 17, 1935.]

*White & Jones,* and *Clark & Kahl,* for appellant.

*Edgar M. Blessing,* and *Johnson & Zechiel,* for appellee.

Wood, J.—The appellee was the owner of some vacant lots in the city of Indianapolis. The appellant

was a contractor engaged in the erection of houses. The appellant was desirous of erecting houses upon appellee's vacant lots and appellee desired to have them erected, expecting thereby to accelerate the sale of its lots. On March 18, 1926, for the purpose of accomplishing their mutual aims, appellant and appellee entered into a written contract. This action involves a determination of the respective rights of the parties under that contract.

Its terms insofar as it is necessary to set them out for the purpose of this opinion may be summarized as follows. Appellant was to furnish plans, specifications, material, labor, and superintend the construction of and construct a house on a lot to be selected by appellee, the same to cost approximately $4000, including supervision charge, but not to exceed the total cost agreed upon and guaranteed by appellant for the plans and specifications furnished, work on the first house to begin at once and to be completed on or before ninety days; appellee was to reimburse appellant for cost of the plans and specifications, material, and labor furnished in the construction of the house on or before 31 days after receipt of an affidavit from appellant that all bills for same had been paid, and fifteen per cent on the cost of the improvement as compensation for services rendered in superintending its construction, to be paid when the house and lot was sold and the initial payment of the purchase price was made. When the house was completed appellee was to have the exclusive right to sell the house and lot for a period of ninety days from that date at 150 per cent of the cost of the improvement, the purchaser to assume payment of all municipal and other public liens payable after March 15, 1926, the initial cash payment for the purchase of the house and lot to be not less than $1000. For making and closing any such sale, appellee was to pay

appellant a commission of five per cent of the purchase price for the house and lot, to be paid when the initial cash payment of such purchase price was made. As soon as the first house was sold a second one was to be constructed on the same terms and conditions controlling the construction of the first one, and if appellant secured contracts for the sale of other houses, it had the right to begin construction thereof on the same terms. Appellant had the exclusive right to construct and sell houses on the lots described in the contract for a period of one year from the date of the contract. In case at least one house was not sold within six months from the date of the contract, appellee reserved the right to cancel it at any time thereafter, unless a house was sold by the appellant before notice of cancellation was given by the appellee.

After entering into the contract appellant erected a house upon a lot selected by appellee. It was erected in accordance with the terms and conditions of the contract in all respects and was approved and accepted by appellee. The total cost of erection of the house was $3,248.19 which amount was fully paid by appellee. During the ninety-day period following the completion of the house appellant endeavored to make a sale of the house and lot but was unsuccessful. Following that period appellant continued its efforts to make a sale but was not able to do so. November 30, 1926, appellee sent appellant a letter, which, omitting the caption and signature, was in the following language:

"On account of your failure to sell within the time specified in our contract of March 18, 1926, the house which you built at 6106 N. Park Ave., we now notify you that we hereby cancel said contract of March 18, 1926, in accordance with paragraph ten (10) thereof.

"We regret very much that this house has not been sold and trust that even though you do not now have the exclusive right to sell same you will

still put forth your best effort to find us a buyer. Perhaps if real estate shows more life in the spring we can re-instate the contract to cover whatever lots may then be unsold.

"We wish to thank you for the businesslike way in which you performed your part of our agreement and feel that we have a well built house to dispose of and that every dollar we spent is represented in true value."

November 10, 1926, appellee conveyed the house and lot to Butler University as a gift to that institution. Fifteen per cent of the cost of the house amounted to $487. Appellant made demand upon the appellee for payment of this sum before the commencement of this action, which was refused. No part of this commission was ever paid. After the gift of the house and lot to Butler University by appellee, appellant brought this action to recover the commission alleged to be due it under the terms of the contract, which was made an exhibit to the complaint and upon which the right of action was predicated. The complaint was in one paragraph. Appellee filed an answer in two paragraphs, the first was a general denial, the second, to which a reply in general denial was filed, was upon the theory of confession and avoidance. On these issues the cause was tried to the court without a jury, which made a special finding of facts, the substance of which is above set out, and stated its conclusions of law thereon in favor of appellee, in accordance with which judgment was rendered. The appellant properly excepted to each conclusion of law, and appeals to this court assigning as error for reversal, that the trial court erred in each of its conclusions of law.

These exceptions admit for the purpose of the exceptions only, that the facts upon which the conclusions are based have been fully and correctly found, limited however to the facts found within the issues formed by the pleadings. The special find-

ing of facts must contain all the facts necessary to entitle the party to a recovery in whose favor the conclusions of law are found. On appeal all facts not embraced within the special finding, will be deemed as not proven by the party having the burden of the issue, and the failure to find a fact essential to a recovery will be regarded as a finding against the party having the burden of proving the same. There was no motion for a new trial, so the truth of the facts contained in the special finding are not controverted. We examine the record in the instant case with the above precepts in mind.

It is agreed by both the parties, that their respective rights are dependent upon the construction to be placed on the contract into which they entered.

In support of the conclusions of law, appellee insists that in order for appellant to recover it was necessary for it to secure a finding of fact to the effect, that there was a guaranteed price for the construction of the house agreed upon and that the cost thereof together with the commission to be paid appellant did not exceed that amount. We think that this contention is without merit. Whether or not this was a fact necessary to be found under the issues tendered, in order to entitle the appellant to recover, it is not necessary for us to decide. It is found as an ultimate fact, that the house was erected in accordance with the terms and conditions of the contract and in all things accepted and approved by the appellee, that the total cost of construction, to wit: $3,248.19 was paid by it and that appellant's commission was $487. The special finding of facts, construed as a whole, show conclusively that this phase of the contract was fully complied with.

The contract in its entirety is set out in finding No. 1, and the letter heretofore incorporated in the resume

of facts is set out in finding No. 6. It is true these two documents contained evidentiary facts, but they were more than evidence, because they furnished a basis for the inference of ultimate facts within the issues. *Rowley* v. *Sanns* (1895), 141 Ind. 179, 40 N. E. 674; *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 80 N. E. 629; *Daily* v. *Smith* (1918), 66 Ind. App. 393, 118 N. E. 312.

The contract was the foundation of the action, and under such circumstances it was proper to incorporate it in the special finding of facts. *King* v. *Downey* (1900), 24 Ind. App. 262, 56 N. E. 680.

In ascertaining the meaning and effect to be ascribed to a special finding of facts, it must be read and considered as a whole. *Mount* v. *Board, etc., supra.* The contract was not unilateral in its terms so that we assume in the absence of a showing to the contrary, it was entered into for the mutual benefit of both parties. It was dual in nature, first it provided for the construction of a house by appellant, and second, for the exclusive sale of the house and lot by appellant for a period of ninety days after the house was completed.

There was no specified time fixed in the contract within which the house was to be sold, in order to entitle appellant to payment of the commission of fifteen per cent for services rendered in supervising its erection. The only effect of appellant's failure to sell the house and lot within the ninety-day period was to postpone the payment of the commission for superintending the erection of the house and to deprive appellant of the exclusive right to make the sale.

The facts as found disclose that the appellant fully complied with that portion of the contract having to do with the erection of the house; that it was approved and

accepted by appellee; and that it received the full benefit of appellant's services.

In avoidance of liability for payment of the commission, appellee alleged in its second paragraph of answer, that pursuant to the terms of the contract, it reserved the right as its option to cancel it and thus relieve itself from any further obligation to appellant including the payment of the commission. For the purpose of ascertaining the intent of the parties, the contract must be examined and construed in its entirety. It provided that:

"As soon as the first house is sold the construction of a second shall be begun on the terms and conditions set forth in the foregoing contract. And should the Home Development Company secure contracts for the purchase of other houses they shall be permitted to begin construction of the same at once on the same foregoing terms. It is furthermore agreed that the Contractor shall have the exclusive right to proceed to build and sell houses on all the seventeen (17) Lots described in this Contract, for a period of One (1) year from date."

It provides further that:

"In case at least one house is not sold within six months from the date hereof, the Owner shall have the right to cancel this contract or agreement at any time thereafter unless a house is sold by the Contractor before the Owner has given a notice of cancellation to said Contractor."

These two provisions, together with the provision giving appellant the exclusive sale of the house and lot for ninety days after completion, refer to the same purpose of the contract, namely the right to erect and sell houses, and the option retained by appellee, to cancel the contract, must be construed to mean the authority under certain conditions, to terminate appellant's right to erect any more houses after receipt of notice from appellee that it cancelled the contract, thus furnishing a means to appellee of protecting itself in the future from

becoming obligated for the construction cost of houses for which there was apparently no demand or sale. This construction is in keeping with the conduct of the appellee.

There was nothing in the communication of November 30, 1926, to indicate that appellee did not intend to pay appellant the commission which it had already earned in superintending the construction of the house. There was no suggestion in this communication, nor was there any condition in the contract from which an inference could be drawn, that if the house and lot were not sold within a certain limit of time the appellee could cancel the contract and thus avoid payment of the commission. That the only purpose to be accomplished in sending the letter was to prevent the erection of more houses until the one already erected was sold is apparent for in the letter the appellee says: "We regret very much that this house has not been sold and trust that even though you do not now have the exclusive right to sell same you will still put forth your best effort to find us a buyer. Perhaps if real estate shows more life in the spring we can re-instate the contract to cover whatever lots may then be unsold." Which clearly indicates that appellee entertained the belief that appellant still had the right under the contract to sell the house and lot. Appellee does not claim any right to rescind the contract because of appellant's failure to perform upon its part. The facts are all to the contrary, in fact, in the letter appellee said, "We wish to thank you for the business-like way in which you performed your part of our agreement and feel that we have a well built house to dispose of and that every dollar we spent is represented in true value."

To hold that it was the purpose and intent of the parties to terminate and cancel all liability of appellee for services, which were already rendered by appellant,

the full benefit of which were received and accepted by appellee would not be justified by the terms of the contract, would be unreasonable and clearly beyond the contemplation of the parties. *Kauffman* v. *Raeder* (1901), 47 C. C. A. 278, 108 Fed. 171, 54 L. R. A. 247.

Under the allegations of the second paragraph of answer the burden was upon appellee to present evidence from which the court could find ultimate facts sufficient to support a conclusion of law that appellee's liability for the commission had been terminated. This the appellee failed to do.

In justification of the conclusions of law appellee argues further that appellant's failure to sell the house and lot caused an inevitable loss to appellee, that the purpose for which the contract was entered into had failed, and that it was inequitable to compel appellee to sustain the entire loss. There was no issue of this kind tendered by the pleadings, nor was there any finding by the court upon which such an argument could be predicated. There was no condition in the contract, that could be construed as relieving appellee from payment for services rendered to and accepted by it if the venture did not prove to be financially beneficial to it. The contract may have resulted in hardship to appellee, but it was its own bargain, and it could not relieve itself therefrom without consent of the appellant. *Lane* v. *Chantilly Corp.* (1929), 251 N. Y. 435, 167 N. E. 578, 68 A. L. R. 653.

The court found as an ultimate fact, that the appellee conveyed the house and lot to Butler University. As heretofore suggested the appellant was not in default in its performance of the contract. This conveyance had the effect of placing the appellee in a position where it could not perform the contract on its behalf, had appellant been successful in making a sale of the house and lot, thus discharging appellant

from further performance of the contract and it could sue at once for a breach thereof. *Hawley* v. *Smith* (1873), 45 Ind. 183; *Charlestown School Twp.* v. *Hay* (1881), 74 Ind. 127; *Mathis* v. *Thomas* (1884), 101 Ind. 119; *Hoyle* v. *Stellwagen* (1901), 28 Ind. App. 681, 63 N. E. 780; *Johann Realty Corporation* v. *Kirkpatrick* (1934), 99 Ind. App. 70, 177 N. E. 907, 189 N. E. 843; *Stanton* v. *N. Y. & Eastern R. R.·Co.* (1890), 59 Conn. 272, 22 Atl. 300; *Wolf* v. *Marsh* (1880), 54 Cal. 228; *Crabtree* v. *Messersmith* (1865), 19 Ia. 179; *Lowe* v. *Harwood* (1885), 139 Mass. 133, 29 N. E. 538; Clark on Contracts p. 562; Anson, Contracts (8th Ed.) p. 292; 3 Elliot Contracts sec. 2039; 1 Beach Modern Law of Contracts sec. 403; 6 R. C. L. sec. 387, p. 1028.

It was found as an ultimate fact that fifteen per cent of the cost of erecting the house was $487; that no part of it had been paid to appellant though demand for payment was made before bringing suit.

The judgment of the lower court is reversed with instructions to re-state the conclusions of law in favor of the appellant and render judgment pursuant thereto.