ELIZA F. HODSDON, administratrix, *vs.* GUARDIAN LIFE INSURANCE COMPANY.

In order to avoid a policy of insurance made and accepted on condition that it should cease and determine upon failure by the assured to pay, when due, a premium note given by him to the insurers, the burden is upon them to prove non-payment.

If an agent of an insurance company receives payment, when overdue, of a premium note given to his principals by the assured upon a policy of insurance issued by them and made and accepted on condition that it should cease and determine upon failure by the assured to pay the note when due; and accounts for such payment to his principals; and they receive it without inquiry; they waive thereby the right to avail themselves of the delay of payment in order to avoid the policy, although the agent had no authority to waive forfeitures.

CONTRACT on a policy of insurance for two thousand dollars upon the life of George W. C. Hodsdon, the plaintiff's intestate.

The policy was annexed to the declaration, and was expressed to be in consideration, among other things, " of the sum of forty-five dollars and sixty-six cents when paid in the manner provided in the rules of this company," " and of the payment of all interest when d    upon any premium notes

given upon this policy;" and it was provided that the sum insured should be paid on Hodsdon's death within the term of the policy, "the balance of the year's premium, if any, being first deducted therefrom, together with all notes for premiums on this policy outstanding at the time, whether due or to become due;" and there was a further provision in these words: "It is also understood and agreed that this policy is made and accepted in reference to the conditions hereto annexed." Annexed to the policy and immediately following the signatures of the president and secretary of the company was this clause: "Agents of the company are authorized to receive premiums when due, upon the receipt of an authorized officer of the company, but not to make, alter or discharge contracts, or waive forfeitures." Then followed the caption "Conditions upon which this policy is issued;" and, under this, among other provisions was the following: "In case the premium or premiums, or any premium note given therefor, or any part of either shall not be paid to said company on or before the time specified for the payment of the same, this policy shall thereupon be forfeited and cease and determine."

The answer admitted the issue of the policy, and set up that it was on condition that it should cease and determine in event of non-payment on or before maturity of any premium note given therefor by the plaintiff, and that in part payment of the premium the plaintiff gave his promissory note as follows, which fell due before his death and never was paid: "$5.71. New York, January 18, 1866. For value received I promise to pay to the Guardian Life Insurance Company or their order five dollars and seventy-one cents in three months with interest, being in part of premium on policy No. 7367 of said company on life of George W. C. Hodsdon." (Signed) "George W. C. Hodsdon."

At the trial in the superior court, before *Wilkinson,* J., the defendants admitted the payment in cash of the premium for the first quarter, and the execution of premium notes for the three other quarters of the first year, and of all notes required by the rules of the company, and it appeared that, at the time of deliv-

ering the policy, they gave a receipt as follows : " The Guardian Life Insurance Company, of New York. New York, January 18th, 1866. Received from George W. C. Hodsdon, $46.66, binding policy No. 7367 from the 18th day of January 1866 at noon, to the 18th day of January 1867 at noon, provided the notes given in part payment herefor with interest are paid according to the tenor thereof. Not valid until countersigned by H. V. Gahagan, Secretary. $45.66 premium. $1.00 policy fee. $46.66."

The defendants also admitted that Hodsdon died July 8, 1866 The plaintiff thereupon contended that he had made a *prima facie* case ; and the judge ruled that the policy having become a valid and subsisting contract, liable to be defeated by the non-payment of the notes, the burden was on the defendants to prove such non-payment.

The defendants then produced a note of the tenor of that recited in their answer, except that the signature was torn off; and F. A. Brewster, their agent, by whom the policy was delivered, testified that it was the note given him by the assured for the second quarterly premium upon the policy ; that it was sent to him in March 1866 and remained in his hands till after the death of the assured ; that it had never been paid by the assured, and that he had never paid the note to the company, but that after the death of Hodsdon the note, through mistake, was charged to him (Brewster) by the defendants, and was accidentally reckoned in his settlement with the company ; and after he found the note had been so reckoned he tore off the name; that he never informed the company that the note was paid, but that he wrote to the company that Hodsdon was dead, and if they paid at all, the quicker they paid the better. The secretary of the company testified that the note was sent to Brewster for collection before it was due, that it was never paid to the company, and in June or July 1866 it was charged to Brewster; that in the latter part of June he came to Springfield with a list of premiums which had become due, including this premium note, and Brewster then told him that this note would be settled in his next account, and he left Brewster with the impression

that it was paid ; that he saw the note in Brewster's hands after the death of the assured, and it was not mutilated; and that after Hodsdon's death, believing that the note had been paid, he called on the plaintiff, and stated that he had no reasonable doubt that the policy would be paid, but at that time he did not know that Brewster still had the note.

To contradict the testimony of Brewster the plaintiff called several witnesses who testified that soon after the death of Hodsdon, Brewster stated that " it was all right, the notes were paid, and the company would pay the policy;" and there was other evidence in the case tending to show that the note had been paid. It thereupon became a question at what time the payment was made, and the judge ruled, among other things, that if the note was paid to the agent after it was due, and the payment was received by the company after it was due, without inquiry, then the policy was binding.

A verdict was returned for the plaintiff, and the defendants alleged exceptions.

*J. M. Stebbins,* for the defendants, cited 2 Greenl. Ev. § 381 ; *Reed* v. *Upton,* 10 Pick. 524 ; *Hunt* v. *Livermore,* 5 Pick. 395 ; *Dana* v. *King,* 2 Pick. 156 ; *Newcomb* v. *Brackett,* 16 Mass. 166 ; *Cadwell* v. *Blake,* 6 Gray, 402 ; *Morrison* v. *Clark,* 7 Cush. 214 ; *Central Bridge* v. *Butler,* 2 Gray, 131 ; *Thornton* v. *Adams,* 11 Gray, 392.

*C. A. Beach,* (*H. Morris* with him,) for the plaintiff.

GRAY, J. Upon the payment of the cash premium and giving of the premium notes by the assured to the insurers, the policy became a binding contract ; although by one of the conditions annexed, upon which it was declared to be made and accepted, it was to cease and determine in case of a failure to pay any premium note when due. The terms of the receipt given for the cash premium did not change the nature of the contract of insurance in this respect. The burden of proving a breach of this executory stipulation and an avoidance of the policy, by non-payment of one of the premium notes, was upon the defendants. *Gray* v. *Gardner,* 17 Mass. 188. *Kingsley* v. *New England Insurance Co.* 8 Cush. 393. *Daniels* v. *Hudson*

*River Insurance Co.* 12 Cush. 426. *Orrell* v. *Hampden Insurance Co.* 13 Gray, 431.

On the point whether the premium note in question had been paid, the evidence was conflicting, and was submitted to the jury with suitable instructions. Although an agent of the company had no authority to bind them by receiving payment of a premium note after it was due, the company might receive such payment at any time. If they received the amount of the note from their agent after it was due, they were bound to inform themselves of the time when it had been paid to him; and by receiving it from him without inquiry they waived the right to insist on the delay in the .payment as a ground of forfeiture of the policy.           .     *Exceptions overruled.*