LOTT MANSFIELD *vs.* THOMAS L. WILES & another.

Suffolk.   October 7, 1914. — May 20, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* Specific performance. *Equity Pleading and Practice,* Appeal, Finding of trial judge.

In suits in equity to enforce the specific performance of contracts to purchase real estate the rule in equity is applicable that the time of performance is not of the essence of the contract unless it has been made so by the parties.

In a suit in equity to enforce the specific performance of a contract to purchase

certain real estate from the plaintiff in which no time for performance was named, it appeared that the parties after making the contract agreed upon a day of performance which was about three months after the contract was made, but that afterwards by common consent there was a delay by reason of a desultory examination of the plaintiff's title during which the defendant had been urging postponement and wrote to the plaintiff that he was unable to raise the necessary money by the day agreed upon and the plaintiff had arranged to help the defendant raise the money on certain securities of the defendant, that the defendant failed to send his securities to the plaintiff to have the money raised on them but obtained the money otherwise and two days before the day fixed for passing the papers the defendant called on the plaintiff with a certified check for the amount of the purchase money and asked whether the papers were to pass on the day fixed, that the plaintiff told him that certain proceedings in the Probate Court necessary to complete the title would not be concluded by that day, and that about a week after the day fixed for performance the defendant wrote to the plaintiff that "all negotiations are off," whereupon the plaintiff caused the matter of adjusting his title to be completed and three weeks later on a day one month after the day that had been fixed for performance tendered to the defendant a deed conveying the land to him by a good title, which the defendant refused to accept. *Held,* that the case came within the rule in equity that time was not of the essence of such a contract where it had not been made so by the parties and that the plaintiff was entitled to a decree for specific performance.

On an appeal from a final decree in a suit in equity, where it appears that the findings of the trial judge were made under a common law rule that was not applicable to the case and that the judge made no finding of fact under the rule in equity that should have been applied, the consideration of the case in this court is not affected by the decision of the trial judge.

The rule that the decision of a judge sitting in equity will not be reversed on appeal unless clearly erroneous is not applicable to a finding of a trial judge which depends upon an inference drawn by him from evidence not in conflict. In regard to the drawing of such an inference this court stands in the same position that the trial judge stood.

The right of a vendor to enforce in equity the specific performance of a contract to purchase certain real estate is not lost by the existence of a small incumbrance upon the property which is immaterial to the purchaser.

In a suit in equity to enforce the specific performance of a contract to purchase from the plaintiff certain real estate in a small town, it appeared that the land in question had a frontage on a certain street of about thirteen hundred feet and that the house upon it was about eighty feet back from the street, that about fifteen years before the making of the contract sought to be enforced the highway commission had taken a strip of the land along its frontage on the street containing four hundred and ninety-two square feet, which was about one hundred and forty feet long and varied from nothing to six and one half feet in width, that a new State highway had been constructed on that street, that in constructing it the highway commission did not use any of the four hundred and ninety-two feet of land thus taken by them and the original retaining wall never had been disturbed, and that neither the plaintiff nor the defendant knew of the taking until after the filing of the bill. *Held,* that the incumbrance, assuming that it was a valid one, was so small and immaterial that it did not deprive the plaintiff of his right to a decree for specific performance, but

that the defendant was entitled to a deduction as compensation for the damage, if any, which had been done to the property by the taking by the highway commission.

LORING, J.   On November 7, 1912, the defendant Wiles wrote to the plaintiff that he would buy his "place" in Hingham for $14,500 if he would assist him in placing a mortgage on it for the sum of $7,500.   We shall hereafter speak of the defendant Wiles as the defendant.   This offer was accepted by the plaintiff, and within a few days he arranged for such a mortgage on the premises. Under that arrangement the defendant signed an application for a mortgage on November 12, 1912.

The plaintiff did not own his "place" in Hingham, but had been in occupation of it since December, 1902, under an option of purchase contained in a lease which expired on December 1, 1912. The lease and the option covered not only the tract of land here in question (some fifteen acres in extent), but another tract of some three or four acres on the other side of East Street.   No time was specified in the agreement when the papers were to be passed. The defendant refused to accept the certificate of the mortgagee's conveyancer as to title and insisted upon the title being passed by John D. Drum, Esquire.   It would seem that the plaintiff, having a right to a good title from those who had succeeded to the title of his lessors, and being bound to give to the defendant a good title, put the defendant's conveyancer, Mr. Drum, in communication with H. F. Atwood, Esquire, who was acting for the successors of the lessors, and left the matter of title to be adjusted between them.

The original lessors were William P. Beale and John C. Beale. Both were non-residents and both died after the date of the lease and before the agreement between the plaintiff and the defendant. Mr. Drum found that John C. Beale died testate, a citizen of New York; that his will had been duly admitted to probate there, but that no ancillary allowance had been made in this Commonwealth. He notified Mr. Atwood of the fact and asked to have the will allowed in this Commonwealth.   Mr. Atwood got the necessary papers from New York, and on December 11, 1912, filed a petition for ancillary allowance of the will here.   The citation on this petition was returnable on January 27, 1913.   During November the option had been extended by the successors of the lessors until

January 10, and just before January 10 it was again extended until February 3. On January 27, the return day of the petition for allowance of John C. Beale's will in Massachusetts, Mr. Atwood found that he had omitted to ask that the executor be exempt from giving sureties on his bond, and told Mr. Drum that he proposed to file an amended petition to avoid the executor's having to give sureties on his bond. To this Mr. Drum made no objection. At the same time Mr. Drum insisted that a license should be secured from the Probate Court for the sale of the land here in question in order to clear the land from the debts of John C. Beale, and to that Mr. Atwood made no objection. There was a conflict in the testimony as to the time when this last requisition was made by Mr. Drum. Mr. Atwood testified that it was not made until the very end of January. Mr. Drum, on the contrary, testified that it was made much earlier.

The plaintiff seems to have let the defendant know that he looked to the money coming to him under the contract between him and the defendant to enable him to pay the successors of the lessors the money due them under the option. The defendant had difficulty in raising the balance of the purchase money over and above the $7,500 mortgage (which the plaintiff had arranged for in the interest of the defendant) and wrote the plaintiff's attorney to that effect several times during the months of December and January. On December 24, when the time fixed for the expiration of the option was January 10, he wrote to the plaintiff's attorney that within the last two days before the date of the letter he had found that he would not be able to raise the money in time for the passing of the papers on January 10. He ended that letter with the statement that he was just as anxious to purchase as formerly, "except that the delay has worked out so that I will have to wait until about March 1st before I can secure the money." In answer the plaintiff's attorney wrote that the plaintiff doubted whether he could secure a further extension of his option. He ended his letter in these words: "As Mr. Mansfield has been looking entirely to you to raise the money and has no other means of raising it on such short notice, I hope you can advise me at once that you will be able to carry out your part of the agreement." As we have already stated, the option later on was extended until February 3. On January 13 the defendant wrote to the plaintiff's

attorney that he had just heard from the West and that he would not be able to give a definite answer until Thursday of that week as to his being ready with the money on February 3. Thursday of that week was January 16. In answer the plaintiff's attorney wrote to the defendant that the plaintiff had been relying upon him, the defendant, "entirely" for the money which he had to pay under his option; that "next Thursday is rather late for him to start raising the money," and he hoped the defendant would "give him a definite answer at that time." On Thursday, January 16, the defendant wrote that his securities were not known on this market, but in Philadelphia and Indianapolis only. He then stated that he had "been unable to do anything with it here;" and he offered to let the plaintiff use the securities, which the defendant had been unable "to do anything with," in raising the money which the plaintiff had to pay to meet his option over and above the $7,500 raised by mortgage. On January 22 the plaintiff's attorney wrote to the defendant that the plaintiff had arranged to raise the necessary money with the defendant's securities. But the defendant never sent his securities to the plaintiff; indeed he never sent an answer to this letter of the plaintiff's attorney dated January 22. In place of carrying out the arrangement which the plaintiff had made at his solicitation, the defendant procured from his father-in-law at Indianapolis a check for $7,000. It is called in the evidence a cashier's check, but from the description of it would seem to have been a certified check. With this check he called upon the plaintiff's attorney on the first of February and told him that he had raised the money and asked if the papers were to go through on February 3, the day then fixed for passing the papers. The plaintiff's attorney told him that owing to certain proceedings which had been taken in the Probate Court the papers could not be passed on that day. In a letter dated February 8 (which was Saturday), received by the plaintiff's attorney on February 10, the defendant notified the plaintiff's attorney that he had been told by Mr. Atwood that the title could not go through until the tenth of March, that he had lost patience with the whole affair, and that he wrote "to say that all negotiations are off." Upon receiving this letter the plaintiff's attorney took up the matter of adjusting the title which theretofore, by common consent, had been left to Mr. Atwood and Mr. Drum; and on

February 24 the will of John C. Beale was allowed by the Probate Court, sureties were given on a bond in a substantial sum, and a "petition for license to sell real estate [was] filed and granted." Thereupon the lessors' successors conveyed to the plaintiff all the land covered by the option, and the executors appointed in Massachusetts of the wills of William P. Beale and John C. Beale made confirmatory releases to him. On March 3 the plaintiff tendered to the defendant a deed conveying the land here in question to him. This tender the defendant refused to accept, and this bill for specific performance was brought on April 16, 1913.

Between March 3, when the plaintiff tendered to the defendant the conveyance of his "place" in Hingham, and April 16, when the present bill in equity was filed, an agreement was entered into between the plaintiff and the defendant which resulted in all the land covered by the option being conveyed to the wife of the defendant Wiles, heretofore spoken of as the defendant. It is apparent that this subsequent agreement was in the nature of a compromise. It has been so treated in effect by both parties, in that no reference has been made to it by either party in support of their respective contentions in this suit.

The judge who heard the case * made two findings of fact. The first is in these words: "I find that, as no time was fixed by the memorandum within which the contract was to be performed, February 3, 1913, was mutually agreed upon as the date for carrying out the agreement, that the time between the making of the contract for the purchase of the property and February 3, 1913, was a reasonable time and that the defendant was not bound to perform or carry out his agreement after that date. I find that the plaintiff tendered a deed to the defendant of the real estate on March 3, 1913. I further find that on that date, moreover, a reasonable time had elapsed for the performance of the contract and the defendant was not bound to accept said deed and carry out said contract."

The second finding is as follows: "I find that the taking of this strip off the front yard, under all the circumstances, made a substantial difference in the premises intended by the parties to

---

* *Crosby*, J. The final decree in this case was made by *Crosby*, J., as a judge of the Superior Court on December 30, 1913, although it was not entered formally until January 26, 1914. On December 31, 1913, Mr. Justice Crosby became a member of this court.

be conveyed, and I therefore find that there was a mutual mistake of both, concerning a material matter, and I find that for this reason the plaintiff is not entitled to specific performance." This second finding is based upon the fact that a strip along the front of the plaintiff's "place" containing four hundred and ninety-two square feet had been taken by the highway commission in 1897. The fact that this four hundred and ninety-two square feet had been taken was not known to either of the parties until after the bill in equity now before us was filed.

A final decree reciting these findings was entered dismissing the bill, and from that decree the plaintiff took the appeal which is now before us.

The only defences now insisted upon by the defendant are his right to abrogate the contract as he undertook to do in his letter of February 8, and the mutual mistake which existed by reason of the highway commission's taking of the four hundred and ninety-two square feet. It is not necessary to consider any other possible defences.

The defendant relies upon the case of *Lowe* v. *Harwood*, 139 Mass. 133, in support of the ruling of the judge that the plaintiff's contract came to an end when the defendant undertook to abrogate it because it had not been performed within a reasonable time. But the decision in *Lowe* v. *Harwood* was made in an action at law, and this is a suit in equity. The rule as to when a contract for the purchase and sale of real estate must be performed is not the same in equity as it is at law. At law it must be performed within the time specified in the contract, or (where no time is there specified) within a reasonable time. And if not then performed it may be rescinded by either party, as was held in *Lowe* v. *Harwood*. But in equity, unless time has been made the essence of the agreement, the contract need not be performed within the time therein specified, nor within a reasonable time where no time has been specified in the agreement. There were intimations in *Richmond* v. *Gray,* 3 Allen, 25, and in *Goldsmith* v. *Guild,* 10 Allen, 239, that this rule ought not to obtain in this country where sales of land stand on a somewhat different footing from that on which they stand in England. But the existence of the rule in this Commonwealth was recognized in the case of *Fuller* v. *Hovey,* 2 Allen, 324, and the whole subject (including the earlier cases) was carefully considered in

*Barnard* v. *Lee*, 97 Mass. 92, 93, 94. In that case the rule was definitively adopted as the law of the Commonwealth. Gray, J., stated the rule (as adopted in this Commonwealth) in these words: "This equitable doctrine was formerly carried to an unreasonable extent, and the specific performance of contracts enforced after such a lapse of time and change of circumstance as to produce as much injustice as it avoided. In modern times, the doctrine has been more guardedly applied; and it is now held that time, although not ordinarily of the essence of a contract in equity, yet may be made so by clear manifestation of the intent of the parties in the contract itself, by subsequent notice from one party to the other, by laches in the party seeking to enforce it, or by change in the value of the land or other circumstances which would make a decree for the specific performance inequitable." The existence of the rule in Massachusetts has been recognized in the subsequent cases of *Dresel* v. *Jordan*, 104 Mass. 407, *Boston & Worcester Street Railway* v. *Rose*, 194 Mass. 142, and *Staples* v. *Mullen*, 196 Mass. 132.

In the first place time was not made of the essence of the contract here in question by the terms in which that contract was drawn.

In the second place there is nothing in the conditions surrounding the contract from which it could be found that as matter of implication time was of the essence of the contract. The contrary is manifestly the fact. By common consent the adjustment of the title had been left to the conveyancer of the defendant and the counsel of the successors of the lessors, and the somewhat desultory course of proceedings adopted by them never was objected to, certainly not by the defendant. On the contrary it is apparent that until the eighth of February (at any rate) the defendant was urging a postponement of the day for passing the papers because he had not been able to raise the money which he had to raise over and above the $7,500 provided for by the mortgage which the plaintiff had arranged for him. On December 24 the defendant had written to the plaintiff's attorney that he would not be ready with the money before March 1, and as late as January 16 he had written to the plaintiff's attorney that he could not give him "definite word" that he would be ready to carry out the contract on February 3, and offered to let the plaintiff use his securities in raising the money because he had been unable to do anything with them in this market. This offer

of the defendant had been accepted by the plaintiff, who arranged to raise the money with the aid of the defendant's securities. And of this the defendant was notified on January 22. It was in this state of the matter that the defendant, in place of sending his securities to be used by the plaintiff in raising the money arranged for by the plaintiff at the defendant's solicitation, raised the money himself and undertook summarily to end the contract. This he had no right to do. What the defendant had a right to do at that time was to make time of the essence of the contract by giving the plaintiff notice to that effect. But such notice, if given, would have had to allow the plaintiff a reasonable time in which to perfect the defects in title which, up to that time, by common consent, had been dragging along. A good statement of the rule is made in Frye on Spec. Perf. (5th ed.) § 1094, in these words: "It is not, of course, possible for either party to arbitrarily and suddenly to put an end to negotiations as to title, or other matters pending between the parties. The time specified by the notice must be reasonable, i. e., long enough for the proper doing of the things required to be done." In the place of undertaking to make time of the essence of the contract by giving a notice that the title must be perfected within a reasonable time, the defendant undertook arbitrarily to end the contract. If the plaintiff within a reasonable time thereafter had not proceeded in the matter he well might be held to have acquiesced in the abandonment of the contract which the defendant had undertaken to bring about. But the plaintiff did proceed within a reasonable time. Within twenty-one days after this notice was received by the plaintiff's attorney he had acquired title under the option and at the end of the twenty-one days he tendered to the defendant a deed conveying to the defendant what (in effect) is now admitted to be a good title to the land in question. This was within a reasonable time. So that if the defendant had given the plaintiff the only notice which he had a right to give on the eighth of February, the plaintiff acquired his title within the time he had a right to, and is entitled to specific performance. The case is so clearly within the limits of the doctrine that it is not necessary to go into the matter further. A good collection of cases on the several points will be found in the notes of Professor Ames in his Cases in Equity Jurisdiction, pages 330 to 334.

It is manifest that the case at bar was not tried in view of the difference between law and equity in the matter of time being of the essence of the contract. No finding of fact was made in this case under the rule in equity that unless made so time is not of the essence of the contract in equity. So far as this question is concerned the case before us is unaffected by a decision by the Superior Court. See in this connection *Rubenstein* v. *Lottow,* 220 Mass. 156.

For these reasons a majority of the court are of opinion that the bill should not have been dismissed on the first ground on which it was dismissed.

This brings us to a consideration of the second ground on which the bill was dismissed in the Superior Court. In Frye on Spec. Perf. (5th ed.) § 1231, it is stated: "On the general principle already stated, the mere fact of the existence of some small or (to the purchaser) immaterial incumbrances on the property is not enough to deprive a vendor of his right to insist on the specific performance of the contract." For a collection of cases, see note to Ames Cases in Equity Jurisdiction, 245, 246.

The finding made in the Superior Court that "the taking of this strip off the front yard, under all the circumstances made a substantial difference in the premises intended by the parties to be conveyed" comes within the rule of *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, and particularly within that rule as applied in *Old Corner Book Store* v. *Upham,* 194 Mass. 101. See in that connection *Hurd* v. *General Electric Co.* 215 Mass. 358. The decision of the issue in the case at bar does not depend upon the credibility of witnesses. But in the case at bar, as in *Old Corner Book Store* v. *Upham,* the decision depends upon the inference to be drawn from evidence not in conflict.

The land here in question had a frontage on East Street of about thirteen hundred feet, and from the plan submitted the house would appear to have been situated some eighty feet back from the side line of the road. The strip of land taken by the highway commissioners was one hundred and forty odd feet long, and varied from nothing to six and one half feet in width. The side line of East Street before the taking by the highway commissioners at this point consisted of a retaining wall about three feet high. It appeared that there were some trees inside this retaining wall.

But it appeared affirmatively that the setting back of the retaining wall in accordance with the new side line would not have affected the trees. It also appeared that the new State highway had been constructed and was in operation, and that the highway commissioners in constructing the State highway did not use any of the four hundred and ninety-two square feet taken by them, and that the original retaining wall never had been disturbed or the land taken used. It appears therefore that the taking was at most a paper taking of an easement in something less than one thirteen hundredths of the area of the land covered by the contract, and did not in fact affect the attractiveness of the property as a residence. The proposition of law stated by Frye is so well established and this case is so well within that proposition of law that it is not necessary to discuss the matter further.

Both parties have assumed that the taking by the highway commissioners under St. 1894, c. 497, was a valid taking and constitutes a present incumbrance although the owner of the land never had actual notice of the taking and the land has not been used during the sixteen years which have elapsed since the taking was made. The defendant is entitled to a deduction as compensation for the damage, if any, which he has suffered by reason of this taking by the highway commission.

It follows that the decree dismissing the bill was wrong, and that the plaintiff is entitled to specific performance of the contract. Under the agreement of compromise the defendant Wiles must pay him the balance of the purchase money, amounting to $2,500 with interest from the third day of March, 1913, less such sum, if any, as shall be found to be due from the plaintiff by reason of his failure (if there was a failure) to make title to the four hundred and ninety-two square feet taken by the highway commission in 1897; and the defendant's wife must convey to the plaintiff the lot of land on the north side of East Street. The plaintiff is entitled to costs against the defendant Wiles; and it is

*So ordered.*

The case was argued at the bar in October, 1914, before *Rugg,* C. J., *Loring, Sheldon, DeCourcy,* & *Crosby,* JJ., and afterwards was submitted on briefs to all the justices constituting the court.

*J. H. Beale* & *A. M. Beale,* for the plaintiff.

*E. R. Anderson,* (*H. Guild* with him,) for the defendants.