PREFERRED UNDERWRITERS, INC., & another *vs.* NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY & others.

Suffolk. December 13, 14, 1922. — January 5, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, & PIERCE, JJ.

*Equity Jurisdiction,* Specific performance of contract. *Contract,* Construction, Performance and breach. *Time.*

At law time is always of the essence of a contract; in equity it is not, except in cases where there is an express agreement that it shall be so treated, or there is a clear and necessary implication from the circumstances that such was the intent of the parties to the agreement, or where there was a notice to the party in default to perform within a reasonable time. Per PIERCE, J.

The right of either party to give a notice which in equity shall bind the other to a performance of a contract at a specified time is not a right to change the construction or add terms to that contract, but is a right which can be exercised with effect in equity upon the relation of the parties only when the notice follows a default in performance on the day named in the contract by the party upon whom the notice is served. Per PIERCE, J.

By the provisions of a contract in writing between a railroad corporation and a corporation designated as underwriters and a trust company the railroad corporation agreed to sell and convey certain real estate and place a deed thereof in the possession of the trust company as an escrow, the trust company to deliver it to the grantee at a certain hour on a certain day at the registry of

deeds provided the underwriters should have "complied with the conditions and performed the agreements by them to be observed and performed in accordance with" provisions of the contract as to payments. Further provisions of the contract were that "Said deed and mortgage may be delivered and the consideration paid at any time prior to" the date named "upon which the parties hereto may agree;" that "in case said underwriters shall not comply with the terms and conditions" as to payment "then said deed shall be delivered by said trust company to said railroad company, and thereafter none of the parties hereto, including said trust company, shall be under any further liability on account of this agreement;" that "if the railroad company shall be unable to convey said title free from all incumbrances . . . said railroad company shall, on the redelivery of said deed . . . pay to said underwriters" a sum which had "been paid to said railroad company as consideration for a previous agreement of purchase and sale with said underwriters and by the non-performance of said agreement has become the absolute property of said railroad company," but which was "to be credited as a payment on the purchase price . . . provided the terms of this agreement are fully performed by said underwriters;" that a further sum paid in cash and note at the time of the delivery of the contract to the trust company as an escrow should likewise "become the absolute property of said railroad company;" and that "if . . . said underwriters shall fail to comply with each and every condition to be by them complied with hereunder, said railroad company may retain said" sums "as consideration for entering into this agreement." *Held,* that

(1) While the contract did not in apt and express words declare that time was of its essence, such purpose unmistakably appeared in its provisions when read as a whole;

(2) A bill in equity could not be maintained by the underwriters against the railroad corporation to compel specific performance of the contract where it appeared that the underwriters had not been able, ready and willing to perform on the day set therefor.

BILL IN EQUITY, filed in the Supreme Judicial Court on May 25, 1922, against the New York, New Haven and Hartford Railroad Company, State Street Trust Company, and Statler Hotel Company, Inc., seeking specific performance by the railroad corporation of a contract in writing for the sale and conveyance of certain real estate on Arlington Street and Providence Street in Boston.

The contract, except the *in testimonium* clause and the signatures, was as follows:

"This agreement made this 13th day of March, 1922, by and between The New York, New Haven and Hartford Railroad Company, a corporation under the laws of the Commonwealth of Massachusetts, hereinafter called the Railroad Company, a party of the first part, and Preferred Underwriters, Inc., a corporation under the laws of the State of Delaware, hereinafter called the Underwriters, party of the second part,

Witnesseth: —

"Whereas, said Railroad Company has, at the request of the Underwriters, caused to be signed and acknowledged a deed of certain land situated in the City of Boston in the County of Suffolk and Commonwealth of Massachusetts, shown on a plan of land in Ward 8, Boston, by Aspinwall and Lincoln, Civil Engineers, dated April 12, 1918, for a more particular description of which reference is hereby made to said deed, said Railroad Company being the grantor in said deed and The Bostonian, Inc., a corporation organized under the laws of the Commonwealth of Massachusetts, being the grantee therein, and said Railroad Company has caused said deed to be delivered to the State Street Trust Company of said Boston to be held and disposed of by it in escrow in accordance with the conditions hereinafter set forth.

"Now therefore, it is agreed as follows:

"I. The Railroad Company agrees to sell, and the Underwriters agree to buy, the parcel of land more fully described in said deed from the Railroad Company to The Bostonian, Inc. this day delivered to the State Street Trust Company as hereinabove set forth, it being understood that said deed is satisfactory to. said Underwriters and is made at the request of said Underwriters to the Bostonian, Inc.

"II. Said Underwriters agree to pay, as the purchase price for the conveyance of said land, the sum of the following: —

(1) One million five hundred and five thousand and eight dollars ($1,505,008.) and interest on one million five hundred and five thousand and eight dollars ($1,505,008.) at the rate of six (6) per centum per annum from November 1, 1920 to May 15, 1922;

(2) An amount equal to five-twelfths (5/12ths) of the taxes assessed on said premises as of April 1, 1920, and interest on such five-twelfths (5/12ths) at the rate of six (6) per centum per annum from November 1, 1920 to May 15, 1922;

(3) The amount of the taxes assessed on said premises as of April 1, 1921, and interest on said last named amount at the rate of six (6) per centum per annum from November 1, 1921 to May 15, 1922;

said sum of the amounts mentioned in clauses (1), (2) and (3) above being hereinafter referred to as the 'purchase price.' The

sum of ten thousand dollars ($10,000) which has heretofore been paid to said Railroad Company as consideration for a previous agreement of purchase and sale with said Underwriters and by the non-performance of said agreement has become the absolute property of said Railroad Company, is to be credited as a payment on the purchase price hereunder, provided the terms of this agreement are fully performed by said Underwriters. Of the balance of said purchase price the sum of twenty-five thousand dollars ($25,000) has been paid to and received by said Railroad Company on the delivery of this agreement, said payment having been made as follows: Five hundred Dollars ($500) by check certified to by the American Trust Company, dated March 8th, 1922; Twenty-four Thousand and Five Hundred Dollars ($24,500) by promissory note of The Bostonian, Inc., dated March 8th, 1922 due and payable in fifteen days, endorsed by Preferred Underwriters, Inc., C. S. Averill, M. B. Hayes, and William H. Sellers, and the sum of seven hundred and fifteen thousand dollars ($715,000.) in cash or by check certified by the Old Colony Trust Company of Boston is to be paid to said Railroad Company on or before May 15th, 1922, and the balance of said purchase price is to be paid by the promissory note of The Bostonian, Inc., for the amount of such balance, payable on or before July 15th, 1922, with interest thereon at the rate of seven (7) per centum per annum. Said note is to be secured by a power of sale mortgage of said land in form satisfactory to the Railroad Company and creating a first lien on said land subject only to such incumbrances as may exist at the time of the delivery of said deed.

"All revenue taxes payable with respect to the instruments to be given under this agreement shall be paid by the Underwriters upon the delivery of such instruments.

"If the payments hereinabove provided for are made in full the Railroad Company agrees to repay to the Underwriters a sum equivalent to interest at the rate of six (6) per centum per annum, on ten thousand dollars ($10,000.) from December 28, 1921 to the date of the delivery of the deed hereunder, and on twenty-five thousand dollars ($25,000) from March 23rd, 1922 to the date of the delivery of said deed.

"III. Said Underwriters agree that the taxes assessed as of April 1, 1922 on said land shall be paid by said Underwriters or by

said The Bostonian, Inc., and said Underwriters shall cause to be deposited with said Railroad Company or, with the approval of said Railroad Company, with said Trust Company, such security for the payment of said taxes as may be satisfactory to said Railroad Company.

"IV. It is understood that it is a condition of this agreement that the title to said premises at the time fixed for the delivery of the deed to The Bostonian, Inc., as herein provided, is to be free from all incumbrances except the rights, reservations and other incumbrances set forth in said deed, the taxes on said premises as of April 1, 1922 and such incumbrances, if any, as may be specifically waived by said Underwriters.

"V. On May 15th, 1922, at 10:00 o'clock A.M., at the Registry of Deeds for the County of Suffolk, Massachusetts, provided said Underwriters have complied with the conditions and performed the agreements by them to be observed and performed in accordance with the provisions of Article II and of Article III of this agreement, or shall then comply with such conditions or perform such agreements, said Trust Company shall, upon receiving from said Railroad Company written acknowledgment of the performance of such conditions and agreements, deliver said deed to The Bostonian, Inc. The Railroad Company agrees to give to said Trust Company upon the performance of such conditions and agreements a written acknowledgment thereof. Said deed and mortgage may be delivered and the consideration paid at any time prior to May 15th, 1922 upon which the parties hereto may agree.

"VI. In case said Underwriters shall not comply with the terms and conditions set forth in Articles II and III hereof, then said deed shall be delivered by said Trust Company to said Railroad Company, and thereafter none of the parties hereto, including said Trust Company, shall be under any further liability on account of this agreement except as hereinafter set forth.

"If the Railroad Company shall be unable to convey said title free from all incumbrances except as that set forth, said Railroad Company shall, on the redelivery of said deed, to wit, by said Trust Company pay to said Underwriters the sum of $10,000 heretofore paid to the Railroad Company and referred to in paragraph two (2) hereof, and the said sum of $25,000 paid to said

Railroad Company at or prior to the execution of this agreement, it being understood that this agreement in so far as it refers to said $25,000. is contingent upon said note for $24,500. above mentioned having been paid. If, however, the said Railroad Company shall be unable [able?] to convey a title as above provided, and said Underwriters shall fail to comply with each and every condition to be by them complied with hereunder, said Railroad Company may retain said $10,000. and said $25,000 as consideration for entering into this agreement.

"The acceptance of the deed by said The Bostonian, Inc., shall be conclusive of the performance by said Railroad Company of the terms of this agreement.

"VII. The State Street Trust Company hereby acknowledges the receipt of the deed above referred to, and agrees to hold and deal with said deed subject to the conditions and in accordance with the provisions hereof."

The suit was heard by *Carroll*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. The single justice filed the following memorandum of findings:

"This case was heard before me June 6 and 14, 1922. Mrs. [Myrtle B.] Hayes, who represented the plaintiff, testified at the hearing in the forenoon of June 6 that she was not ready at that time to make the payment of $750,000 called for in the contract to be made on May 15, 1922. After the noon recess on June 6 she testified that she had communicated with the parties in New York and was now able to state positively that the payment could be made on Monday, June 12. I find this testimony to be true. She at no time made any tender of the amount due under the contract. On May 23 a contract of purchase and sale of the land described in the plaintiff's bill was made between the defendant and Ellsworth M. Statler, which contract has not been waived and which both the defendant and Mr. Statler desire to have performed.

"Previous to March 13, 1922, the date of the contract between the plaintiff and the defendant, fourteen or fifteen options had been given the plaintiff, or to Mrs. Hayes, all of which options had expired on that date. These options covered the land in question and extended over a period of two years prior to the date of the contract. On May 3, 1922, Mr. Arthur P. Russell,

vice-president of the defendant and the officer in charge of the negotiations with the plaintiff, notified Mrs. Hayes that the New York, New Haven and Hartford Railroad Company would expect her to fulfil the contract and comply with its terms on May 15, 1922.   I rule in this proceeding in equity that time was not of the essence of the contract as it was drawn and considered apart from the circumstances; but I find that the notification that the defendant expected the plaintiff to fully perform on May 15, 1922, was given on May 3, and I rule that this was a reasonable notice, and that the time was of the essence of the contract under all the circumstances.   On May 10 Mr. Russell again notified Mrs. Hayes that the company would insist upon performance of the contract on May 15.   There was no waiver at any time of the terms of the contract."

By order of the single justice, a decree was entered dismissing the bill.   The plaintiffs appealed.

*W. F. White*, for the plaintiffs.

*J. L. Hall* & *S. C. Rand*, for the defendants.

PIERCE, J.   This is an appeal by the plaintiffs from a decree of a single justice of this court dismissing their bill, which seeks to enforce the specific performance of a written agreement of the defendants to convey to The Bostonian, Inc., a corporation, certain real estate on Arlington and Providence streets, Boston, particularly described in a deed delivered as an escrow to the State Street Trust Company of Boston; which deed, by the terms of the agreement, was to be delivered to The Bostonian, Inc. by the trust company on the performance of the agreement to be observed and performed by the Preferred Underwriters, Inc.   The plaintiffs not being able, ready and willing to fulfil their obligation to pay the purchase price for the conveyance on the day named in the contract of sale and purchase, the defendants treated the contract as ended and without notice to the plaintiffs entered into a contract to convey the land to Hotel Statler Company, Inc. for a price less than that which the plaintiffs had agreed to pay.

At law time is always of the essence of a contract; in equity it is not, except in cases where there is an express agreement that it shall be so treated, or there is a clear and necessary implication from the circumstances that such was the intent of the parties to the agreement, or where there was a notice to the party in

default to perform within a reasonable time. *Mansfield* v. *Wiles*, 221 Mass. 75, 82. *King* v. *Connors*, 222 Mass. 261. *Morgan* v. *Forbes*, 236 Mass. 480. *Parkin* v. *Thorold*, 16 Beav. 59. 1 Ames Cases in Eq. Jur. 327, and cases cited in notes.

It is to be observed that the right of either party to give a notice which in equity shall bind the other to a performance of the contract at a specified time is not a right to change the construction or add terms to that contract, but is a right which can be exercised with effect in equity upon the relation of the parties only when the notice follows a default in performance on the day named in the contract by the party upon whom the notice is served. Fry, Spec. Perf. § 1092. *Mansfield* v. *Wiles, supra. Fuller* v. *Hovey*, 2 Allen, 324. *Asia* v. *Hiser*, 38 Fla. 71. *Taylor* v. *Brown*, 2 Beav. 180. *King* v. *Wilson*, 6 Beav. 124. *Green* v. *Sevin*, 13 Ch. D. 589, 599. *Rousech* v. *Schindler*, 7 Terr. L. R. 92. The agreement does not in apt and express words declare that time is of the essence of the contract, but as has been before said time is of the essence of a contract in equity as at law, when the purpose of the parties, as appears upon a consideration of the entire instrument, is to make time an essential element of the contract. Such purpose unmistakably appears in the provision of paragraph V that the deed held as an escrow by the State Street Trust Company shall be delivered by the trust company to The Bostonian, Inc. on May 15, 1922, at 10:00 o'clock A.M., at the registry of deeds, provided the underwriters corporation shall have "complied with the conditions and performed the agreements by them to be observed and performed in accordance with the provisions of Article II and of Article III of this agreement." It also appears in the provision of the said article that "Said deed and mortgage may be delivered and the consideration paid at any time prior to May 15th, 1922 upon which the parties hereto may agree." It also appears in Article VI in the provision that "In case said Underwriters shall not comply with the terms and conditions set forth in Articles II and III hereof, then said deed shall be delivered by said Trust Company to said Railroad Company, and thereafter none of the parties hereto, including said Trust Company, shall be under any further liability on account of this agreement." And in the provision of Article VI that "If the Railroad Company shall be unable to convey said title free from

all incumbrances . . . said Railroad Company shall, on the re-
delivery of said deed . . . pay to said Underwriters the sum of
$10,000;" which sum had been paid to the railroad company as a
consideration for a previous agreement of purchase and sale with
said underwriters and, by the non-performance of said agreement,
had become the absolute property of the railroad company, but
which by the terms of Article II of the agreement was to be
credited as a payment on the purchase price, provided the terms
of this agreement are fully performed by said underwriters; as
also the sum of $25,000 paid to the railroad company in cash and
note, if the note had been paid; and particularly the further pro-
vision of said article that "if . . . said Underwriters shall fail to
comply with each and every condition to be by them complied
with hereunder, said Railroad Company may retain said $10,000.
and said $25,000 as consideration for entering into this agreement."
The case falls within *Garcin* v. *Pennsylvania Furnace Co.* 186
Mass. 405, *Wheaton Building & Lumber Co.* v. *Boston,* 204
Mass. 218, 227.

*Decree affirmed.*