Church of God in Christ, Inc. *v.* Congregation Kehillath Jacob.

---

CHURCH OF GOD IN CHRIST, INC. *vs.* CONGREGATION KEHILLATH JACOB & another.

Suffolk.     December 12, 1974. — August 14, 1975.

Present: HALE, C.J., KEVILLE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Contract,* For sale of real estate, Performance and breach, Waiver, Modification. *Waiver. Evidence,* Presumptions and burden of proof. *Equity Jurisdiction,* Specific performance.

Where performance on time was expressly made a condition of an agreement for the purchase and sale of real estate, an oral extension of the time for the purchaser's performance of the agreement, conditioned on the purchaser's making certain payments, did not operate as a waiver of the provision that time was of the essence. [424-425]

Where an oral extension of the time for the performance of an agreement for the purchase and sale of real estate was conditioned on

the purchaser's payment of monthly installments, the burden of proving payment of the installments was on the purchaser, and in the absence of a finding as to the purpose of certain payments made by the purchaser during the extension period, it was not entitled to specific performance of the agreement. [425-426] KEVILLE, J., dissenting, with whom GOODMAN, J., joined.

BILL IN EQUITY filed in the Superior Court on September 4, 1973.

The suit was heard by *Moynihan,* J., on a master's report.

*Edward J. Barshak* (*Alan S. Goldberg* with him) for African Methodist Episcopal Zion Church.

*David L. Taylor* (*Irving Levenson* with him) for Church of God in Christ, Inc.

*Frank L. Kozol,* for Congregation Kehillath Jacob, submitted a memorandum.

ARMSTRONG, J.   This is a bill in equity brought by the plaintiff against the Congregation Kehillath Jacob (Congregation) and the African Methodist Episcopal Zion Church (Zion Church) seeking specific performance of an agreement under which the Congregation was to sell real estate to the plaintiff, and an injunction against the sale of the same property to the Zion Church pursuant to a later agreement. The defendants appeal from a final decree, entered on a master's report, ordering the Congregation specifically to perform the first agreement.

No appeal was taken from the interlocutory decree confirming the master's report, which therefore settled the facts between the parties. *Perry* v. *Oliver,* 317 Mass. 538 (1945). *Limoli* v. *Accettullo,* 358 Mass. 381, 382 (1970). The issue is thus whether the subsidiary findings in the report and reasonable inferences therefrom show the plaintiff to be entitled to enforcement of the agreement between it and the Congregation. *Marine Contractors Co. Inc.* v. *Hurley,* 365 Mass. 280, 282 (1974). A majority of the court are of the opinion that they do not.

The agreement between the plaintiff and the Congregation was executed on October 19, 1972. Under its terms the

Congregation, having relocated to Newton, was to sell the plaintiff its former synagogue in Dorchester for a price of $75,000, to be paid by a deposit of $10,000 on execution, a further deposit of $25,000 on passage of title, and the balance by a promissory note for $40,000, with interest at seven per cent per annum, secured by a first mortgage, to be paid, in part, in monthly installments of $500 commencing one month after passage of title. Title was to pass on December 27, 1972, and time was expressly stated to be of the essence.

On December 27, the plaintiff was unable to pay the $25,000 further deposit. The plaintiff and the Congregation instead executed a written agreement modifying the purchase and sale agreement by extending the time for performance to February 26, 1973. Under its terms the plaintiff was to pay (1) forthwith, $6,000 towards the further deposit; (2) on January 26, 1973, interest on the $19,000 "balance of deposit", $5,000 to be applied towards that deposit, and $500 to be applied to principal and interest on the $40,000 balance (after the still not fully paid further deposit) of the purchase price; and (3) on February 26, 1973, the remainder of the deposit ($14,000), with interest, and a further $500 payment of interest and principal on the balance (after the further deposit) of the purchase price.

On February 26, 1973, the plaintiff was again unable to make the payments called for by the agreement, as modified by the extension. Instead, the plaintiff and the Congregation entered into an oral extension agreement under which the plaintiff was to have "an additional reasonable time in which to obtain the necessary funds to perform" (which we infer refers to the deposit balance) "on the express understanding [among other things] that the extension would last only so long as payments were made under the purchase and sales agreement" (which we infer refers to the $500 principal and interest payments due in monthly installments on the balance, after payment of the further deposit, of the purchase price).

The master's report does not include findings concerning the amounts of payments made by the plaintiff after the

3 Mass. App. Ct. 420                                        423

Church of God in Christ, Inc. *v.* Congregation Kehillath Jacob.

oral extension was agreed to on February 26. There is a finding that between February 12 and June 12 the plaintiff paid the Congregation varying sums totalling $4,441, but no finding is made as to the application of those payments. On June 12 the plaintiff informed the attorney for the Congregation that it "was having financial difficulties and expected to be able to produce sufficient funds to complete the transaction probably in August or the first of September of 1973." The attorney responded "that such an arrangement was all right with ... [him] so long as it met the approval of ... [the president of the Congregation]", but there is no finding that such approval was ever given.

In early July, 1973, the president of the Congregation informed the plaintiff that another prospective purchaser of the synagogue was about to make an offer, that if the plaintiff "had 'some alternative' ... i.e., a new firm proposal, he ... would present it to the congregation", and that he would " 'delay the meeting (of the congregation) as long as possible' ... to give the ... [plaintiff] time to develop 'some alternative.' " On July 16, 1973, the Zion Church offered to purchase the synagogue for $75,000, and submitted a deposit of $2,500. The Congregation notified the plaintiff of the receipt of this offer. On July 27, 1973, the Congregation by letter notified the plaintiff that it had "failed to perform under the terms and conditions of an agreement to purchase" the synagogue and "that said agreement has been cancelled."

The Congregation returned the Zion Church's $2,500 deposit on August 6 and made what was in effect a counter-offer. There followed a course of negotiation between the Congregation and the Zion Church which culminated in the execution of a purchase and sale agreement between them on August 24. Meanwhile the Congregation refused tenders of cash, cashiers' checks, and a personal check (in unspecified proportions) made by the plaintiff on August 22 and August 24. Whether the proffered payments were pursuant to the purchase and sale agreement, or were in furtherance of a new proposal, is not at all clear from the

master's findings. However, they have no significance on the view that the majority takes of the case, which is that the plaintiff has failed to show that the purchase and sale agreement was still in effect when the payments were tendered.

Performance on time was expressly made an essential condition of the purchase and sale agreement. Such a provision, when not waived by words or conduct, will be given legal effect. *Porter* v. *Harrington,* 262 Mass. 203, 207 (1928), and cases cited. *American Oil Co.* v. *Katsikas,* 1 Mass. App. Ct. 437, 439-440 (1973). The plaintiff argues that the extensions of time agreed to by the parties had the effect of waiving the provision that time was of the essence. Nothing in the cases cited by the plaintiff (*Moskow* v. *Burke,* 255 Mass. 563 [1926]; *Porter* v. *Harrington, supra; Gentile Bros. Corp.* v. *Rowena Homes, Inc.* 352 Mass. 584 [1967]; *Flynn* v. *Wallace,* 359 Mass. 711 [1971]), however, supports a contention that an extension, by itself, necessarily nullifies a provision that time is of the essence.

An extension of time to perform an agreement operates as a waiver only in accordance with its terms. If, for example, the parties to a contract to sell land, time being of the essence, agree to a one day extension of the time for performance, the later time is still of the essence. To contend that the extension waives the provision that time is of the essence, and that absent such a provision the parties have a reasonable time to perform, is to ignore the intention of the parties. Similarly, if the parties agree to an extension conditional on the making of a payment, and the payment is not made, the extension is nullified, because the parties have not agreed to an extension regardless of whether the payment is made or not.

In the present case the oral agreement that the plaintiff should have an additional reasonable time to pay the deposit was conditional. It was made by the parties to depend on the continued payment of the monthly installments due on the balance of the purchase price. Upon failure of the condition, the extension would be at an end. Absent agreement of the parties to the contrary, the agreement

3 Mass. App. Ct. 420                              425

Church of God in Christ, Inc. *v.* Congregation Kehillath Jacob.

would be terminated, and, if no tender had been made by either party within the time for performance, both parties would be discharged. Corbin, Contracts, § 663, p. 181 (1960). See *American Oil Co.* v. *Katsikas, supra.*

The burden of proving payment of the installments called for by the extension agreement was on the plaintiff, both because it was the plaintiff's burden to demonstrate the existence of the defendant's contractual obligation (*Phipps* v. *Mahon,* 141 Mass. 471 [1886]; *Waldo Bros. Co.* v. *Platt Contr. Co. Inc.* 305 Mass. 349, 359 [1940]; *George* v. *Goldman,* 333 Mass. 496, 497 [1956]) and because the payment of the installments at the requisite times by the plaintiff was "a condition precedent to the defendant's duty of immediate performance . . . [and thus] a necessary part of the plaintiff's cause of action. . . ." Corbin, Contracts, § 749, p. 467 (1960). *Mirachnick* v. *Kaplan,* 294 Mass. 208 (1936). See *Morrison* v. *Clark,* 7 Cush. 213 (1851); *Central Bridge Corp.* v. *Butler,* 2 Gray 130 (1854); *Wylie* v. *Marinofsky,* 201 Mass. 583 (1909). Compare *Gray* v. *Gardner,* 17 Mass. 187 (1821), analysed by the court as a present debt subject to defeasance on a condition subsequent. With *Gray* v. *Gardner* compare *Temple* v. *Phelps,* 193 Mass. 297 (1906), and *Starratt* v. *Mullen,* 148 Mass. 570 (1889). It cannot be argued that the burden should be shifted on the basis that the making of such payments was a fact peculiarly within the knowledge of the defendants. *Muchnick* v. *Bay State Harness Horse Racing & Breeding Assn. Inc.* 341 Mass. 578, 583 (1961).

The plaintiff has not shown that it made the required installment payments so as to keep the purchase and sale agreement in effect. There is nothing in the master's report to indicate that any payment was made by the plaintiff to the Congregation after June 12, 1973. To the contrary, the master made findings (which he labeled "general findings") to the effect that in early July, 1973, the Congregation informed the plaintiff orally that it regarded the agreement as terminated and that the plaintiff made no additional payments to the Congregation thereafter. Thus, the agreement must be taken to have terminated before the

plaintiff's offers of payment (which in any event are not shown to have been legally effective tenders of performance) were made on August 22 and 24, 1973.

As the time for performance under the agreement has expired, and the plaintiff has failed to show that it had, within that time, performed or been able and willing to perform its part of the agreement and that the Congregation had neglected or refused to perform its part of the agreement, the plaintiff is not now entitled to specific performance. *Thaxter* v. *Sprague,* 159 Mass. 397, 399 (1893). *Cole* v. *Killam,* 187 Mass. 213 (1905). *Preferred Underwriters, Inc.* v. *New York, N. H. & H. R.R.* 243 Mass. 457 (1923). *Hunt* v. *Bassett,* 269 Mass. 298, 302-303 (1929). See *Powers, Inc.* v. *Wayside, Inc. of Falmouth,* 343 Mass. 686, 691-692 (1962). The principles applied in *Limpus* v. *Armstrong, ante,* 19, 22-23 (1975), do not apply where time is of the essence and has expired.

In view of this conclusion we need not consider the defendant's contention that the master found that the "reasonable" period of the oral extension had expired and that that finding is binding upon the court.

The Congregation has waived the forfeiture provisions of the purchase and sale agreement. The plaintiff is entitled to recover from the Congregation the amounts paid by it towards the purchase price. The final decree is reversed. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

The case was argued before Hale, C. J., and Keville, Grant, and Armstrong, JJ., and was thereafter submitted on the record and briefs to Goodman, J.

Keville, J., dissenting (with whom Goodman, J., joins). The question presented is whether the plaintiff is entitled to specific performance of its agreement to purchase certain real estate from the Congregation, or whether it lost its right to compel specific performance either because of its failure to satisfy a condition attached to an oral extension of the agreement or by the expiration of the oral extension

3 Mass. App. Ct. 420                              427

Church of God in Christ, Inc. *v.* Congregation Kehillath Jacob.

itself.[1] The master concluded that the oral extension of the agreement granted on February 26, 1973, was terminated by the Congregation after the period of the extension, for a "reasonable time," had expired in early July, 1973. The trial judge confirmed the master's report after one recommittal and entered a final decree ordering specific performance of the agreement between the plaintiff and the Congregation. On appeal, Zion Church contends that the conclusion of the master was correct.[2]

The majority does not reach the question whether the oral extension expired after the passage of a reasonable time. Rather, it relies upon the plaintiff's alleged failure to satisfy one of three conditions, the payment condition,[3] included in the oral extension; and the majority has concluded that, since the plaintiff failed to satisfy that condition, the extension and the purchase and sale agreement were terminated.

Noting that the plaintiff paid $4,441 to the Congregation between February 12 and June 12, 1973, and made no payment to the Congregation after June 12, 1973, the majority concludes (a) that the plaintiff "has not shown that it made the required installment payments so as to keep the purchase and sale agreement in effect," and (b) that the plaintiff's failure to meet the payment condition terminated the oral extension and the agreement to which the extension was attached. This conclusion rests largely upon an inference that the plaintiff was obliged to pay "the $500

---

[1] The failure to satisfy a condition attached to the oral extension, or the expiration of the oral extension itself, would give the Congregation the concomitant right to treat its agreement with the plaintiff as rescinded.

[2] Following its appeal, the Congregation has assumed the role of stakeholder and has taken no position as to the rights of the competing purchasers.

[3] The master found that the oral extension was granted "on the express understanding that the extension would last only so long as payments were made under the Purchase and Sales Agreement, or until there was a change in circumstances, or until pressure was placed upon President Lampert by the membership of the Congregation."

principal and interest payments due in monthly install-
ments on the balance [$40,000], after payment of the fur-
ther deposit [$14,000], of the purchase price." The major-
ity finds support for this inference in the terms of the
purchase and sale agreement of October 19, 1972, and the
written extension thereto made on December 27, 1972, and
presumes to inject these terms into the language of the
oral payment condition. In so doing, the majority ignores
the indefinite nature of the payment condition of the oral
extension and the conduct of the parties following the
granting of that extension.

The master found that the oral extension was to "last
only so long as payments were made under the Purchase
and Sales Agreement." But neither the agreement nor the
written extension defines the plaintiff's obligation to pay
during the oral extension, because the parties were not con-
templating the need for a further oral extension when those
two documents were executed. Obviously, neither the origi-
nal agreement nor the written extension states when or in
what amounts payments were to be made during the "rea-
sonable time" allowed under the oral extension. When the
parties contemplated a specific payment schedule, they de-
fined the time and amount of payments in writing. If they
had intended the specific payment schedule asserted by the
majority, they could have done so pursuant to another writ-
ten extension.

I believe the fair inference to be that the parties had
abandoned the specific payment schedule of the written
extension and entered upon an informal, oral extension
designed to enable the plaintiff gradually to pay off the
$14,000 balance due on the $35,000 deposit called for in the
original agreement. The master made no finding which
defined the plaintiff's payment obligation under the condi-
tion. Nor did he find that the plaintiff's suspension of pay-
ments after June 12, 1973, amounted to a failure to satisfy
that condition. The absence of such findings, considered
with the Congregation's acceptance of varying sums total-
ing $4,441 between February 12 and June 12, 1973, strongly
suggests that no specific payment obligation was intended

3 Mass. App. Ct. 420                                      429

Church of God in Christ; Inc. v. Congregation Kehillath Jacob.

by the parties during the oral extension.[4] The plaintiff was obliged to continue payments toward the $14,000 deposit balance due on the $35,000 deposit during the oral extension, but this general obligation is all that clearly appears to have been contemplated.

Even if one were to read into the payment condition the specific requirements assumed by the majority to be present there, those obligations were satisfied by the plaintiff's payments totaling $4,441. At best, the majority could not possibly infer from the original agreement and the written extension more than that the plaintiff would be obliged to pay $500 a month to compensate for mortgage payments which would have become due, had performance of the agreement occurred according to its original schedule, monthly interest payments on the unpaid balance of $14,000 owed to the Congregation, and unspecified payments to satisfy the $14,000 obligation. Absent a schedule specifying when and in what amounts the $14,000 balance of deposit was to be paid, that alleged requirement was too indefinite to permit the seller summarily to terminate the oral extension because of the buyer's failure to pay it. See *Geo. W. Wilcox, Inc.* v. *Shell E. Petroleum Prod. Inc.* 283 Mass. 383, 388-390 (1933). Compare *Lucey* v. *Hero Intl. Corp.* 361 Mass. 569, 573-575 (1972). Contrast *Cygan* v. *Megathlin,* 326 Mass. 732, 733-736 (1951). The record demonstrates that the remaining obligations read into the written extension by the majority were satisfied by the payments totaling $4,441 between February 12 and June 12, 1973. Monthly payments of $500 for a six months' period from February, 1973, through July, 1973, would total $3,000. Interest payments due on the $14,000 deposit balance did not exceed $140 a month under the written extension and would not exceed $840 in that six months' period. The remaining $600 could have been applied to reduce the $14,000 deposit balance.

---

[4] The master concluded that the Congregation "further extended the said [purchase and sale] agreement orally and *by accepting payments from the* [*plaintiff*]" (emphasis supplied).

Since the payment condition did not terminate the oral extension, the Congregation could not justifiably regard the agreement as having terminated prior to the passage of a reasonable time for performance granted by the oral extension.[5]

The next question is whether the "reasonable time" afforded by the oral extension had expired as of July 27, 1973, when the Congregation notified the plaintiff in writing that their agreement was terminated. As the master found, the oral extension of the purchase and sale agreement gave the plaintiff "additional reasonable time" to perform. If a "reasonable time" for performance had expired and neither party had performed, one party would not be entitled to compel specific performance by the other. See *Lowe* v. *Harwood*, 139 Mass. 133, 135-136 (1885); *Mansfield* v. *Wiles*, 221 Mass. 75, 81 (1915); *Gevalt* v. *Diwoky*, 319 Mass. 715, 716 (1946). The "reasonable time" granted by the oral extension in the present case thus established the time limit beyond which nonperformance by one party would cause the loss of its right to demand specific performance from the other and would enable the other to treat the agreement as rescinded. Corbin, Contracts, § 716, pp. 365-366 (1960). *Powers, Inc.* v. *Wayside, Inc. of Falmouth*, 343 Mass. 686, 689-692 (1962). *Richardson* v. *Parker*, 353 Mass. 764 (1968).

Neither the judge nor this court is bound by the master's conclusion that the plaintiff's rights under its agreement with the Congregation, as extended, were terminated in early July, 1973, before the latter executed a purchase and sale agreement with Zion Church. We take the master's subsidiary findings with proper inferences to be drawn from them and reach our own conclusions. *O'Brien* v. *Dwight*, 363 Mass. 256, 281 (1973). *Peters* v. *Wallach*, 366 Mass. 622, 626 (1975).

---

[5] Indeed there has been no suggestion by any of the parties that the payment condition was not complied with or is otherwise material. The master did not find and the majority does not contend that either of the other two conditions occurred. *Hodsdon* v. *Guardian Life Ins. Co.* 97 Mass. 144, 147 (1867).

"What is a reasonable time depends on all the circumstances of the case." *Powers, Inc.* v. *Wayside, Inc. of Falmouth, supra,* at 691. In the present case, the parties were in frequent and close communication with each other with respect to the performance of their agreement. While time was made of the essence in the original agreement, it was not of the essence in the written extension in light of the Congregation's acceptance of a payment due on January 26, 1973, on January 31, 1973. *Barnard* v. *Lee,* 97 Mass. 92, 95 (1867). *Porter* v. *Harrington,* 262 Mass. 203, 207-208 (1928). Nor was time made of the essence under the oral extension, which, by its own allowance of a reasonable time in which to perform, demonstrated that no specific date for performance had been established.[6]

The oral extension and the Congregation's acceptance of $4,441 between February and June, 1973, in the absence of a specific payment schedule, indicate that the performance obligation of the plaintiff and the understanding between the parties were much more flexible and informal than they had been under the original agreement and the written extension.

The fact that the plaintiff had made payments of more than $4,000 during the oral extension indicates that the reasonable time contemplated by the parties was a longer period than it would be if no performance were being rendered by the plaintiff. Compare Restatement: Contracts, § 276(c) p. 407 (1932). At no time prior to July did the Congregation intimate that the plaintiff was not performing according to its expectations. When, in early July, it did suggest that the plaintiff develop a "new proposal," it apparently did so in order to use the presence of a prospective buyer to accelerate the plaintiff's performance. The record does not disclose that the extension of time through July, 1973, caused harm to the Congregation. Contrast *Gevalt* v.

---

[6] The master found, "After the oral extension of the Purchase and Sales Agreement was made on February 26, 1973, and prior to July, 1973, no date certain was established for completion of Petitioner's performance by the Congregation."

*Diwoky, supra.* Since the determination of a reasonable time should also take into account what would be equitable in the circumstances, the plaintiff's continuing payments for maintenance, repairs and improvements during the oral extension[7] should also be considered. Compare *Barnard* v. *Lee, supra,* at 95.

In light of the conduct of the parties and the language employed in the oral extension under which they were acting, I conclude that a "reasonable time" had not expired as of July 27, 1973. In my view, the oral extension neither expired by the passage of a "reasonable time" nor by the failure of the payment condition attached to it. If the Congregation had wished to accelerate performance by the buyer, it could have assigned a reasonable time[8] for the completion of the agreement, thereby again making time of the essence for the performance by the plaintiff (*Limpus* v. *Armstrong, ante,* 19, 22 [1975]) and at the assigned time been itself prepared to tender performance to the plaintiff. The Congregation could not, however, simply notify the plaintiff that their agreement was cancelled. Id. at 22, 23. *Mansfield* v. *Wiles,* 221 Mass. at 82-83. The Congregation's unwillingness to perform, manifested by its notice to the plaintiff that their agreement was terminated, relieved the plaintiff of an obligation to tender payments due to the Congregation as a prerequisite to specific enforcement of their agreement. *Limpus* v. *Armstrong, supra,* at 22, and cases cited.

Accordingly, the final decree of the Superior Court ordering specific performance of the plaintiff's purchase and sale agreement with the Congregation should be affirmed.

---

[7] By July 27, the plaintiff, in addition to having paid more than $25,000 toward the total deposit requirement of $35,000, had maintained the property from the date of the original agreement, including the replacement of fifty-six broken windows, and had provided for the fabrication and installation of protective grillwork at a cost of $1,600.

[8] A specific date for performance which is reasonable in time from the date of demand for performance.